COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO, demandante y recurrida, *v.* JOSÉ A. LUGO TORRES, demandado y recurrente.

*Número:* RE-92-371          Resuelto: 25 de mayo de 1994

*Teodoro Maldonado Rivera*, abogado del recurrente; *Héctor Vargas Díaz*, abogado de la recurrida.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

I

El 13 de febrero de 1988, mientras José A. Lugo Torres conducía su Jeep Cherokee fue impactado por el vehículo manejado por Luis E. Echevarría Malavé. Echevarría Malavé fue acusado por no ser chofer autorizado y por el delito de negligencia. Subsiguientemente, satisfizo a Lugo Torres con quinientos dólares ($500).[1] En virtud de ese

---

[1] La Minuta de 10 de mayo de 1988, correspondiente a la vista de los casos criminales T-88-1569-1578 contra Echevarría Malavé, refleja que el perjudicado "está conforme en recibir $500.00 en diez días como pago total de los daños". Anejo I, pág. 3.

Como veremos, la evidencia avala la determinación del Tribunal de Distrito en cuanto a que que la intención de las partes era transigir el caso criminal por quinientos dólares ($500) y que dicho acuerdo sólo cubría el deducible (no cubierto por el

acuerdo, el caso de negligencia se archivó bajo la Regla 246 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Lugo Torres, quien tenía asegurado su automóvil con la Cooperativa de Seguros Múltiples de Puerto Rico (en adelante Cooperativa), le reclamó por los daños al vehículo, sin embargo no le notificó la transacción efectuada en el procedimiento penal. La Cooperativa le pagó dos mil trescientos once dólres con sesenta y cuatro centavos ($2,311.64). Lugo Torres los aceptó sin manifestar reserva alguna, por lo que, a tenor con la cláusula subrogatoria, cedió sus derechos de entablar cualquier acción contra Echevarría Malavé. La Cooperativa incoó una demanda (Civil Núm. TD-89-3021) contra Echevarría Malavé, quien levantó la defensa de transacción. En ese pleito no se hizo parte a Lugo Torres. Con vista a esta defensa, sin ulterior cuestionamiento, la allí demandante Cooperativa pidió el archivo por desistimiento el 5 de marzo de 1990. Así se decretó mediante Sentencia de 13 de marzo.

El 20 de marzo la Cooperativa demandó a Lugo Torres en el Tribunal de Distrito, Sala de Ponce (Civil Núm. TD-90-848), reclamándole lo que le había pagado, más costas, gastos y honorarios de abogado. En síntesis, alegó que la póliza le impedía transigir, y ello conllevaba "eximir de responsabilidad al causante del accidente". Anejo IV, pág. 1. Adujo que se vio impedida de reclamarle con éxito a Echevarría Malavé la cantidad desembolsada a Lugo Torres como compensación por los daños que sufriera su vehículo. Lugo Torres contestó que el arreglo se dio dentro del marco de un procedimiento criminal, con el único objetivo de finalizar *ese* proceso. Alegó que su intención fue transigir por quinientos dólares ($500) *solamente por los daños no cubiertos por la póliza*, esto son, el deducible y los gastos legales en que incurrió durante la vista criminal y por el asesoramiento recibido del Lcdo. Teodoro Maldonado

---

seguro) y ciertos gastos legales.

Rivera sobre la reclamación que eventualmente hizo a la Cooperativa aseguradora.

Con vista a la prueba documental y testifical, el Tribunal de Distrito (Hon. Ramón Rojas Peña, Juez) desestimó en sus méritos al dictaminar que la transacción fue *parcial* y no tuvo el efecto de impedir la subrogación.

En apelación, el Tribunal Superior (Hon. Felipe Ortiz Ortiz, Juez) revocó. Sentenció que los quinientos dólares ($500) constituían una transacción *por la reclamación total* de los daños; que Lugo Torres la efectuó no empece la póliza lo vedaba; que bajo el palio protector de la Regla 246 de Procedimiento Criminal, *supra*, tuvo el efecto de cosa juzgada y, por ende, su aseguradora no podía subrogarse.

A solicitud de Lugo Torres, revisamos.([2])

## II

Procede primero trazar las coordenadas fácticas acorde con la prueba.

Distinto al Tribunal Superior, el de Distrito tuvo ante sí no sólo la minuta de la vista del caso criminal de 10 de mayo de 1988 —donde consta que el allí perjudicado, Lugo Torres, "está conforme en recibir quinientos dólares ($500) en diez (10) días como pago total de los daños", Anejo I, pág. 3— sino el beneficio del testimonio de Echevarría Malavé, quien declaró que "conocía que había una compañía de seguros y que el pago de $500.00 sólo constituyó un pago parcial ya que la diferencia se le reclamaría a la compañía de seguros". E.N.P., pág. 1. Además, dicho foro escuchó al asegurado Lugo Torres, quien atestó que no era ló-

---

([2]) En su recurso, denominado erróneamente "revisión", señala:

"Incidió el Tribunal Superior al sustituir el criterio del Tribunal de Distrito en su apreciación de la prueba y en su lugar concluir que la transacción por los $500.00 era una por la totalidad de los daños; al determinar que la póliza prohibía en forma absoluta *todo tipo* de transacción y al concluir que dicha transacción forzosamente tenía el efecto de impedirle a la aseguradora el recobro por vía de subrogación ya que dicha transacción por haber sido efectuada al amparo de la Regla 246 de Procedimiento Criminal tenía *autoridad de cosa juzgada.*" Petición de revisión, pág. 4.

gico pensar que por quinientos dólares ($500) estuviera transigiendo los daños que alcanzaban hasta tres mil dólares ($3,000). Declaró, también, que le había advertido a Echevarría Malavé que aceptaba quinientos dólares ($500) porque le reclamaría el resto del dinero a su propia aseguradora. Con vista a esa evidencia y credibilidad merecida, el Tribunal de Distrito concluyó que la transacción fue parcial: "La prueba documental admitida establece que los daños ascendieron a más de $3,000.00. Resulta inverosímil admitir que el perjudicado transó todos los daños del vehículo por la suma de $500.00 cuando él tenía un seguro que cubría todos los daños de su vehículo." Anejo IV, pág. 7.

Coincidimos con esa apreciación y lógica decisoria. Es razonable pensar que teniendo Lugo Torres una póliza que cubría todos los daños de su vehículo aceptara quinientos dólares ($500) únicamente por concepto de los daños *no cubiertos* por la póliza, que son los no comprendidos en el contrato del seguro.

■ En ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, no debió el Tribunal Superior intervenir en la apelación con esa apreciación. *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993); *Gallardo v. Petiton y V.T.N., Inc.*, 132 D.P.R. 39 (1992); *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Valencia, Ex parte*, 116 D.P.R. 909 (1986); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984); *Morán Simó v. Gracia Cristóbal*, 106 D.P.R. 155 (1977).

### III

Ante este trasfondo fáctico, examinemos el derecho aplicable. Sucintamente, la contención de Lugo Torres era que el Tribunal Superior incidió al concluir que la póliza

prohibía *todo tipo* de transacción y, por ende, la efectuada parcialmente le impidió a su aseguradora, la Cooperativa, recobrar el dinero pagado a tenor con la cláusula de subrogación. Aduce además, como error, resolver que la transacción bajo la Regla 246 de Procedimiento Criminal, *supra*, tenía autoridad de cosa juzgada.

Al respecto, el ilustrado Tribunal Superior sentenció:

> Aún cuando fuera pertinente al caso la intención de transigir parcialmente del asegurado; cosa que no fue así según minuta del Tribunal de Distrito (supra), ¿podría este tener esta intención cuando le obligaba un contrato de seguro a no tenerla? De su póliza surgían obligaciones tanto por subrogación como por cooperación. Debemos colegir que el asegurado fue, cuando menos negligente en el cumplimiento de sus obligaciones contractuales ....
>
> El contrato de seguro, póliza del asegurado, en ningún lugar le permitía a este el bifurcar su resarcimiento por transacción alguna. Claramente lo prohibía. El tomarse el asegurado esa libertad, sin notificación alguna a la aseguradora, constituye la omisión de la diligencia simple que hubiera resultado el solicitar la asistencia de la aseguradora para un caso como el presente, cuando la causa de acción no le pertenecía por haberla cedido en subrogación. Siendo el contrato ley entre las partes; el asegurado no podía transigir ni total ni parcialmente y al así hacerlo lo hace responsable de los perjuicios que su conducta ocasionó. Anejo I, págs. 5–6.

Este razonamiento es incorrecto. Según indicado, el Tribunal de Distrito encontró probado que la intención fue transigir por una cantidad de dinero que *sólo abarcaba los gastos no compensables por la póliza de seguro.* ¿Era jurídicamente posible? En otras palabras, ¿podía el contrato de seguro prohibir *cualquier* tipo de transacción, incluso una por partidas no compensables? Resolvemos en la negativa.

■ Genéricamente hablando, el contrato de seguros obliga a indemnizar a otra persona, a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto allí previsto. Art. 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102.

■ Por su parte, el de vehículos "es el seguro contra la pérdida o los daños causados a un vehículo terrestre o aeronave o cualquier animal de tiro o de montura, o de propiedad mientras estuviere en los mismos o sobre los mismos, o cargándose en los mismos o descargándose de ellos, por cualquier riesgo o causa, y contra cualquier pérdida, gasto o responsabilidad por la pérdida o los daños causados a personas o la propiedad, resultantes de la posesión, conservación, o uso de cualquiera de dichos vehículos, aeronaves o animales, o incidentales a los mismos". Art. 4.070 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 407.

■ El Código de Seguros de Puerto Rico establece la responsabilidad absoluta del asegurador "cuando ocurriere *una pérdida cubierta por dicha póliza,* y el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectúe el asegurado en virtud de sentencia firme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia". (Énfasis suplido.) Art. 20.010 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2001.

Ciertamente, la cantidad de dinero pagada por razón de un deducible y ciertos gastos legales como los aquí mencionados no están comprendidos dentro del concepto "pérdida" cubierto por la póliza. Por lo tanto, ninguna cláusula contractual puede prohibir que se transijan daños *no reembolsables*; su validez estaría en entredicho. En el caso de autos no detectamos en la póliza alguna cláusula que lo prohíba. El lenguaje que más se aproxima es el relativo a la subrogación, dispositivo de que *"[e]n caso de cualquier pago bajo esta póliza* la compañía se subroga en todos los derechos del asegurado a la recuperación a que hubiere lugar contra cualquier persona u organización y el asegurado firmará y entregará documentos y papeles y hará todo lo que fuere necesario para garantizar tales derechos. El asegurado no hará nada que pueda perjudicar tales derechos después de

la pérdida o daño". (Énfasis suplido.) *Esta cláusula no es suficiente*: su propio lenguaje sólo activa el derecho de subrogación "en caso de cualquier pago *bajo esta póliza*".

▮▮▮▮▮ No cabe, pues, la interpretación del Tribunal Superior. "La subrogación es el derecho del asegurador a situarse en la posición del asegurado para gestionar —contra terceras partes legalmente responsables— al asegurado el recobro de una pérdida o daño *pagado por el asegurador.*" (Enfasis y traducción nuestros.) 16 *Couch, Cyclopedia of Insurance Law* Sec. 61:1, pág. 75 (1983). El mismo autor comenta que "un asegurador tiene el derecho de recobrar —por vía de la subrogación— los daños que ha sido llamado a pagar a un asegurado *bajo su póliza* (la del asegurado). La subrogación de un asegurador (*indemnity insurer*) surge por operación de ley, cuando éste hace un pago al asegurado; así, el pago de una obligación por un asegurador (*surety*) ordinariamente lo hace acreedor a la subrogación de todos los derechos, remedios y *equities* del asegurado (*obligee*)". (Enfasis y traducción nuestros.) Íd., Sec. 61.4, págs. 77–78. A los mismos efectos, véase *Albany's Ins. Co. v. Cía. Des. Comercial P.R.*, 125 D.P.R. 421 (1990). La subrogación sustituye a una persona en lugar del acreedor, a cuyos derechos en relación con la deuda aquélla accede, y le confiere todos los derechos, remedios y seguros. *No confiere mayores derechos al que se subroga que los que tenía el asegurado.* Se coloca en la misma posición, pues nadie puede adquirir —vía subrogación— derechos que no tenía aquél cuyos derechos invoca el asegurador. *Couch*, supra, Sec. 61, págs. 118–120.

Vemos que si el derecho de subrogación del asegurador se traduce en recobrar el pago por concepto de daños cubiertos por un contrato de seguro, ¿cómo sostener que la transacción efectuada por el asegurado Lugo Torres, *limitada al deducible y a ciertos gastos legales*, impedía a la Cooperativa aseguradora ejercitarlo?

Resolvemos que una cláusula de subrogación, como la

de autos, no impide al asegurado mantener su *propia acción* contra el causante de los daños para recobrar los daños *no cubiertos por el seguro.* Véase *Couch,* supra, Sec. 61:240, págs. 299–300.[3]

## IV

En cuanto a la cláusula de cooperación, es obvio que la póliza impone al asegurado esa obligación. No obstante, el ilustrado Tribunal Superior incidió al determinar que Lugo Torres la incumplió al transigir. La dinámica procesal y los antecedentes fácticos del caso revelan que fue la propia Cooperativa, como aseguradora, la que se colocó en esa frágil posición. Al subrogarse y demandar a Echevarría Malavé por los daños pagados y éste levantar la defensa de transacción, optó por desistir sin dar a Lugo Torres la oportunidad de explicar el alcance del arreglo en el caso criminal.

■ La cláusula de cooperación "tiene como propósito el proveer una oportunidad al asegurador de prepararse para enfrentar cualquier reclamación o para determinar si tiene una defensa genuina". *Cuebas Fernández v. P.R. American Ins. Co.,* 85 D.P.R. 626, 638 (1962). Además, persigue proteger el interés de la aseguradora, tiende a evitar la colusión entre el asegurado y un lesionado, el fraude y también *la negativa* del asegurado a ejecutar algún acto. Su violación por el asegurado releva al asegurador de responsabilidad. 8 *Appleman, Insurance Law and Practice*

---

[3] Para una discusión general sobre los efectos de una transacción en la responsabilidad civil del asegurador, véanse: Anotación, *Collision Insurance: Insured's Release of Tortfeasor Before Settlement by Insurer as Releasing Insurer from Liability,* 38 A.L.R.2d 1095; *Lady Corinne Trawlers v. Zurich Ins. Co.,* 507 So. 2d 915 (Ala. 1987).

En torno a un análisis de los derechos y remedios legales de la compañía aseguradora contra el causante de los daños a un asegurado, véanse: Anotación, *Rights and Remedies of Property Insurer as Against Third Person Tortfeasor Who Has Settled with Insured,* 92 A.L.R.2d 102, y casos allí citados; 7A *Am. Jur. 2d Automobile Insurance* Secs. 438–441, págs. 94–100 (1966) y casos allí citados.

Secs. 4771–4772, págs. 211–215 (1981). Hemos resuelto que "[e]l asegurado se obliga a cooperar con la aseguradora, *al ser requerido* acudirá a todas las vistas, le ayudará a realizar cualquier transacción aportando evidencia y la comparecencia de testigos y cooperará en todo lo que se relaciona con la tramitación del pleito". (Énfasis suplido.) *Morales v. Automatic Vending Service, Inc.*, 103 D.P.R. 281, 284 (1975). Véase, también, *Insurance Co. of P.R. v. Tribunal Superior*, 100 D.P.R. 405 (1972). Ello implica cumplir en forma razonable y sustancial con los términos de la póliza y actuar con la mayor honestidad y buena fe. La necesidad de cooperar puede, incluso, surgir antes de que se entable cualquier acción judicial. El asegurado debe revelar justa, franca y verdaderamente la información razonable pedida por el asegurador, de forma que le facilite determinar si existe o no una defensa genuina. *Appleman*, supra, Sec. 4774, págs. 231–233. Para que ese deber se estime incumplido, la actitud del asegurado tiene que ser de abierta y voluntaria obstrucción; la falta, de carácter sustancial y material. *Appleman*, supra, Secs. 4773 y 4776, págs. 222 y 244.

En el caso de autos no hubo tal negativa; de hecho, la Cooperativa nunca le requirió a Lugo Torres que explicara los términos del acuerdo o compareciera al pleito original instado por aquélla contra Echevarría Malavé. La transacción de los daños de Lugo Torres no cubiertos ni reembolsables bajo la póliza no infringió la cláusula de cooperación. "El asunto de la cooperación, en lo que respecta al incumplimiento de una cláusula de cooperación en una póliza, envuelve no solamente la buena fe del asegurado sino también la buena fe de la aseguradora. Un asegurador de automóviles tiene que hacer una demostración sustancial de diligencia antes de descansar en la defensa

de no-cooperación." (Traducción nuestra.) *Appleman*, supra, Sec. 4772, pág. 221.[4]

■ "Es doctrina jurisprudencial en Puerto Rico que el incumplimiento por el asegurado de una condición en la póliza que requiera cooperación con el asegurador, en ausencia de perjuicio, no libera de responsabilidad al asegurador." *Mun. of San Juan v. Great Ame. Ins. Co.*, 117 D.P.R. 632, 636 (1986). Véanse: *Valle v. Sucn. Wiscovitch*, 88 D.P.R. 86 (1963); *Cuebas Fernández v. P.R. American Ins. Co.*, supra; *Lafontaine v. Municipio*, 79 D.P.R. 583 (1956); *Faulkner v. Nieves*, 76 D.P.R. 434 (1954).

## V

Finalmente, en las circunstancias de autos, también incidió el Tribunal Superior al concluir que la transacción efectuada bajo el palio de la Regla 246 de Procedimiento Criminal, *supra*,[5] gozaba de autoridad de cosa juzgada.

■ Precisa recordar que "[l]a transacción es un contrato por el cual las partes, dando, prometiendo o rete-

---

[4] Para que la aseguradora levante con éxito esta defensa, de ordinario tiene que demostrar: que actuó diligentemente al gestionar la cooperación del asegurado; que sus esfuerzos fueron razonablemente calculados para obtener esa cooperación, y que la actitud subsiguiente del asegurado fue de voluntaria y consciente obstrucción. *García v. Abrams*, 471 N.Y.S.2d 161 (3er Dept. 1984); *Thrasher v. United States Liability Ins. Co.*, 278 N.Y.S.2d 793 (1967).

[5] Dispone:

"Sólo podrán transigirse aquellos delitos menos graves (*misdemeanors*) en los que la persona perjudicada pudiere ejercer acción civil por los daños sufridos, pero aun tales delitos no podrán transigirse si se cometieren tumultuosamente, o con la intención de cometer un delito grave (*felony*) o por o contra un funcionario judicial o funcionario del orden público en el ejercicio de sus funciones.

"En aquellos casos en que esta regla permite la transacción, si la parte perjudicada compareciere ante el tribunal donde está pendiente la causa en cualquier momento antes de la celebración del juicio y reconociere plenamente que ha recibido reparación por el daño causádole, el tribunal podrá en el ejercicio de su discreción y con la participación del fiscal, decretar el archivo y sobreseimiento definitivo del caso, previo pago de las costas. El tribunal expondrá los fundamentos del sobreseimiento y archivo, los cuales se harán constar en las minutas. El sobreseimiento y archivo así decretado impedirá la formulación de otro proceso contra el acusado por el mismo delito ." 34 L.P.R.A. Ap. II, R. 246.

niendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzando". Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821.(⁶) "[S]e puede transigir sobre la acción civil proveniente de un delito." Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4824. No obstante, su alcance depende de lo acordado por las partes, pues "[l]a transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma. La renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre que ha recaído la transacción". Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826. Véanse: *Magee v. Alberro*, 126 D.P.R. 228 (1990); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987).

En este caso, la sentencia del Tribunal de Distrito determinó correctamente que la transacción fue *parcial*, por partidas no cubiertas ni reembolsables por el seguro. Sobre esas partidas es que "[l]a transacción tiene para las partes la autoridad de la cosa juzgada". Art. 1715 del Código Civil, 31 L.P.R.A. sec. 4827.(⁷) A fin de cuentas, "[a] pesar de que

---

(⁶) Art. 1712 del Código Civil, 31 L.P.R.A. sec. 4824.

(⁷) Notamos, además, en la Ley de Vehículos y Tránsito de Puerto Rico, la intención del legislador de separar cualquier procedimiento por infracción a alguna disposición de la misma de cualquier acción civil posterior:

"En adición a la pena que se imponga al conductor por la infracción cometida bajo las disposiciones de este Capítulo, el tribunal deberá fijar una cantidad razonable para el pago de daños. El pago de daños consiste en la obligación impuesta al conductor por el tribunal de pagar a la parte perjudicada una suma en compensación por los daños y pérdidas que hubiere causado a su propiedad, como consecuencia de su acto delictivo.

"Dicho pago deberá ser fijado para ser satisfecho en dinero o la entrega de bienes equivalentes a los que fueron destruidos o dañados o por pago de reparación directa de los daños. *Las cantidades así pagadas o de los bienes entregados se deducirán de la suma que el tribunal pueda imponer por sentencia en caso de surgir de los hechos una demanda de daños y perjuicios. El pago de daños que autoriza esta sección no incluye daños a la persona y los sufrimientos y angustias mentales.*

"No se fijará el pago de daños en aquellos casos en que el conductor demuestre al tribunal que posee un seguro de responsabilidad pública que cubre los daños causados por él o que la víctima ya ha sido compensada.

el contrato de transacción tiene el efecto de cosa juzgada ... no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa. Antonio Gullón Ballesteros, *La transacción. Tratado práctico y crítico de Derecho civil*, Madrid, Instituto Nacional de Estudios Jurídicos, 1964, T. 43, Vol. 2, pág. 161".[8] *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782, 787 (1981).

Tampoco hay identidad de las cosas; ahora la Cooperativa aseguradora pretende recobrar daños cubiertos por la póliza; en el caso criminal la transacción versó sobre daños no cubiertos.

*Se dictará sentencia que revoque la del Tribunal Superior, Sala de Ponce, y confirme la del Tribunal de Distrito.*

El Juez Asociado Señor Alonso Alonso no intervino.

---

"Podrá procederse a la ejecución de la sentencia imponiendo el pago de daños que autoriza esta sección en igual forma que si se tratare de una sentencia dictada en un pleito civil ordenando el pago de una cantidad, según se establece en la Regla 176 de las de Procedimiento Criminal de 1963, Ap. II del Título 34." (Énfasis suplido.) 9 L.P.R.A. sec. 1872a.

[8] Véanse, además: J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. 12, págs. 160–161; Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. 28, págs. 355–356.