# 2001 DTA 139

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

PONCE ROLLINGS MILLS OF PUERTO RICO, INC.
Recurrido

v.

CARIBBEAN REFRACTORY SERVICES, INC., CIGNA INSURANCE
COMPANY OF PUERTO RICO
Peticionarios

Núm. KLAN-00-01408

San Juan, Puerto Rico, a 29 de marzo de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Ortiz Carrión y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Los peticionarios, Caribbean Refractory Services, Inc. y Cigna Insurance Company of Puerto Rico, en adelante, los peticionarios, solicitan, mediante recurso de *certiorari*, la revisión de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. ■ Mediante dicho dictamen, el foro de instancia denegó una "*Solicitud de Sentencia Sumaria*" presentada por Cigna Insurance Company of Puerto Rico.

Por las razones que expondremos a continuación, denegamos la expedición del auto solicitado.

### I

Según surge del recurso, la compañía Ponce Rolling Mills P.R., Inc., en adelante, Ponce Rolling, fabrica y vende varillas de acero para la industria de la construcción. En febrero de 1995, contrató los servicios de Caribbean Refractory Company, en adelante, Caribbean, para que ésta aplicase material refractario a los dos hornos de Ponce Rolling, identificados como los hornos número 01 y número 02. Los trabajos de refracción fueron efectuados por Caribbean entre los meses de febrero a abril de 1995. El proceso tenía el propósito de que los hornos pudiesen ser utilizados a temperaturas elevadas, sin que sufrieran daños físicos en la conversión del acero en varillas. Por realizar dicho trabajo, le fue pagada la suma de $15,372.00.

Durante el proceso, fue necesario instalar piezas y maquinarias adicionales en la planta, provocando que Ponce Rolling no pudiera comenzar el proceso de "*curar*" los hornos hasta noviembre de 1995. Este proceso era necesario como preparación previa de dichos hornos para la producción de las varillas de acero, programada para enero de 1996.

Una vez completado dicho proceso, en enero de 1996, se prendió el horno número 2. Luego de dos (2) días de producción de varillas tuvo que paralizarse la misma, toda vez que el material refractario instalado en los hornos por Caribbean comenzó a desbaratarse y a romperse en pedazos. Caribbean procedió a realizar el trabajo de reparación, facturando $5,045.45. Durante los meses subsiguientes Caribbean arregló el horno en dos ocasiones distintas, facturando $6,000.68 y $18,183.65, respectivamente.

Así las cosas, Ponce Rolling alegó que, en el mes de junio de 1996, por motivo de no haber podido arreglar el horno, tuvo que suspender de manera definitiva sus operaciones de producción de varillas, viéndose obligada a cesantear a sus empleados.

En agosto de 1996, Ponce Rolling comenzó el proceso de reclamación ante el asegurador Cigna Insurance Company of P.R., en adelante, Cigna, quien había expedido una póliza ■ a favor de Caribbean que incluía una línea de Seguro Comercial de Responsabilidad General. ■ Del mismo modo, comenzó el análisis para dar con la causa del quebrantamiento del material refractario instalado por Caribbean. Para estos fines, alegadamente Cigna contrató los servicios del ajustador de reclamaciones, Alberto Pochet, en adelante, el Ajustador, a fin de que realizara la investigación correspondiente.

Ante la supuesta inacción de Cigna, consistente en no indicar su posición en cuanto a dicha reclamación,

Ponce Rolling presentó demanda el 5 de septiembre de 1995 por incumplimiento de contrato y negligencia. En dicha demanda, Cigna fue incluida como codemandada.

El 3 de octubre de 1996, Cigna le informó a Caribbean que había sido emplazada, que le proveería representación legal, y que se reservaba su derecho a denegar cubierta bajo la Cláusula de Exclusión J(6) de la póliza.

Luego de solicitar el traslado del caso a la Sala de Ponce y que fuera concedido el 25 de octubre de 1996, se le ordenó a Cigna y Caribbean que contestaran la demanda. Así, pues, luego de haber transcurrido más un (1) año de la presentación de la demanda, Cigna contestó la demanda el 16 de septiembre de 1997. En la misma, presentó como defensa afirmativa que la Cláusula de Exclusión J(6) de la póliza no proveía cubierta para los hechos alegados; esto es, que la póliza expedida no cubría los daños causados a la propiedad que fueron ocasionados por los trabajos realizados incorrectamente por su asegurada Caribbean. A esos efectos, el 2 de octubre de 1997, Cigna solicitó por primera vez sentencia sumaria.

Así las cosas, el 31 de marzo de 1998, el tribunal *a quo* denegó la solicitud de desestimación sumaria promovida por Cigna. Resolvió, dicho foro, que la póliza proveía cubierta para daños a la propiedad aun cuando el trabajo o labor que los produjo hubiera sido incorrectamente realizado, si se probaba adecuadamente que se trataba de una obra completada.

El 30 de noviembre de 1998, Ponce Rolling cursó una misiva a Cigna indicándole que le sometería una oferta transaccional. El 4 de diciembre de 1996, Cigna contestó la misiva y solicitó documentos adicionales a fin de evaluarlos. Ponce Rolling remitió a Cigna los documentos solicitados.

Por su parte, el Tribunal de Primera Instancia señaló una vista para el 26 de enero de 1999. La vista serviría para fijar los últimos procedimientos a seguir en el caso. Celebrada la vista, Cigna indicó que no estaba en posición de expresarse sobre la oferta de transacción y se acordó la fecha en la que debía completarse el descubrimiento de prueba.

Durante el descubrimiento de prueba, tanto Cigna como Ponce Rolling comenzaron a citar deposiciones. A tales efectos, Ponce Rolling citó a deposición y producción de documentos al presidente de Caribbean, señor Steven J. Long. Asimismo, notificó un interrogatorio a dicha parte. Ponce Rolling alegó que, luego de notificado el descubrimiento, la representación legal del señor Long le informó al tribunal que había intentado comunicarse con su cliente y que había realizado un sinnúmero de gestiones encaminadas a localizarlo, resultando todas ellas infructuosas. También alegó que Cigna realizó gestiones para localizar al señor Long, que igualmente resultaron infructuosas. Además, alegaron que el señor Edgar Wizel, Gerente de Reclamaciones de Cigna, se había comunicado en Estados Unidos con Forensic Technology Services intentando localizar al señor Long o a Caribbean, resultando sus gestiones infructuosas. Finalmente, plantearon que Cigna contrató los servicios del investigador privado Ismael Vázquez, quien llevó a cabo gestiones encaminadas a localizar al señor Long, sin éxito alguno.

Mientras tanto, Ponce Rolling solicitó se ordenara a Caribbean que contestase los interrogatorios notificados y se ordenara la comparecencia del señor Long a la toma de deposición. El tribunal de instancia le advirtió a Caribbean que habría de eliminar sus alegaciones y anotar la rebeldía, dado el claro incumplimiento con las órdenes del tribunal. Así las cosas, Ponce Rolling solicitó la imposición de sanciones y la eliminación de las alegaciones de Caribbean por incumplir con el descubrimiento de prueba. El tribunal *a quo* procedió a anotar la rebeldía a Caribbean.

El 31 de agosto de 1999, Cigna presentó una "*Contestación Enmendada a Demanda*" en la que levantó como defensa afirmativa que su asegurada Caribbean había abandonado la jurisdicción de Puerto Rico sin informar su paradero. Sostuvo que ello constituia una violación del deber de cooperación de su asegurada,

causándole graves perjuicios.

El 8 de marzo de 2000, Cigna presentó una *"Moción de Sentencia Sumaria"*. Argumentó que la póliza expedida exigía del asegurado la cooperación en todo pleito y que el incumplimiento de Caribbean con su deber de cooperación era evidente, por lo que procedía la desestimación sumaria de la reclamación en su contra. Por su parte, Ponce Rolling se opuso a la desestimación sumaria solicitada por Cigna y solicitó al tribunal que dictara sentencia adjudicando a su favor la fase de negligencia en el caso.

El 18 de agosto de 2000, Cigna y Caribbean presentaron *"Réplica a la Contestación a Moción de Sentencia Sumaria y Moción Sobre Sentencia Sumaria"*. El 22 de noviembre de 2000, notificada el 29 de noviembre de 2000, el tribunal *a quo* dictó la resolución de la cual se recurre.

Inconformes con dicha determinación, Cigna y Caribbean presentaron recurso ante este Tribunal. El 26 de febrero de 2001, Ponce Rolling compareció a esta Curia. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II
En su escrito, los peticionarios plantean que incidió el Tribunal de Primera Instancia al denegar la sentencia sumaria solicitada por Cigna, en vista de que no existía controversia de hechos y de que se estableció el perjuicio que ocasionó a dicha parte la falta de cooperación y evasión voluntaria de la jurisdicción de su asegurada.

## III
La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, es la que le permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, 150 D.P.R. __ (2000), **2000 J.T.S. 33**, a la pág. 681; *Piñero González v. Autoridad de Acueductos y Alcantarillados*, 146 D.P.R. __ (1998), **98 J.T.S. 140**, a la pág. 216; *Mattei Nazario v. Vélez & Asoc.*, 145 D.P.R. __ (1998), **98 J.T.S. 55**, a la pág. 924; *Soto v. Caribe Hilton*, 137 D.P.R. 294, 300 (1994).

Así, también, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente"*. Véase, en general, *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, **2000 J.T.S. 33**, a la pág. 681; *Soto Vázquez v. Rivera Alvarado*, 144 D.P.R. __ (1997), **97 J.T.S. 145**, a la pág. 368; *Rodríguez v. Secretario de Hacienda*, 135 D.P.R. 219, 222 (1994); *Tello v. Eastern Air Lines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

Además, esa misma Regla 36.3 de Procedimiento Civil autoriza a que se dicte sentencia sumaria inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demuestran que no hay controversia real sustancial en cuanto a ningún hecho pertinente y que como cuestión de derecho debe dictarse la misma a favor de la parte promovente.

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, **2000 J.T.S. 33**, a las págs. 681-83; *López Stubbe v. Gus Lallande*, 144 D.P.R. __ (1998), **98 J.T.S. 9**, a la pág. 523; *Neca Mortgage Corporation v. A & W Developers S.E.*, 137 D.P.R. 860, 869 (1995); *Pilot Life Insurance Company v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994); *Hurtado Latre v. Osuna y Fresse*, 138 D.P.R. 801, 809 (1995); *PFZ Properties, Inc. v. General Accident Insurance Co.*, 136 D.P.R. 881 (1994); *Caquías Mendoza v. Asoc. Residentes Mansiones de*

*Río Piedras*, 134 D.P.R. 181 (1993); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990).

En el proceso de determinar si la Regla 36.3, *supra*, es un vehículo apropiado para disponer total o parcialmente de una demanda, el Tribunal Supremo ha expresado que *"[e]l sabio discernimiento es el principio rector para su uso, porque mal utilizado puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido procedimiento de ley. Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos".* *Management Administration Services, Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.*, 128 D.P.R. 538, 548 (1991); *González v. Alicea*, 132 D.P.R. 638, 646-647.

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico, Inc.*, 135 D.P.R. 716, 726-727 (1994); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993). De ordinario, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *Rivera Rodríguez v. Departamento de Hacienda*, 149 D.P.R. __ (1999), **99 J.T.S. 144**, a la pág. 53; *Bonilla Medina v. Partido Nuevo Progresista*, 140 D.P.R. __ (1996), **96 J.T.S. 33**, a la pág. 790; *Rivera v. Superior Pkg., Inc.*, 132 D.P.R. 115, 133 (1992).

Debemos añadir, que al dictarse una sentencia sumaria no se pueden poner en peligro o lesionar los intereses de las partes. La parte que solicita la sentencia sumaria en un pleito, tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor. *Hurtado Latre v. Osuna, supra*.

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Solamente debe ser dictada una sentencia sumaria *"en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes"*. *PFZ Properties v. General Accident Insurance Corp., supra*. La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *Id.*, a la pág. 914 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y se sostenga en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo, debe dictarse sentencia sumaria en su contra, si procediere en derecho. Véase, la Regla 36.6 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.6; *Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos*, 144 D.P.R. __ (1997), **97 J.T.S. 147**, a la pág. 400; *Management Administration Services Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *PFZ Properties v. General Accident Insurance Corp., supra*, a las págs. 912-913; *Pilot Life Insurance Company v. Crespo Martínez, supra*, a la pág. 632; *Soto Vázquez v. Rivera Alvarado, supra*, a las págs. 368-369.

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede. *Management Administration Services Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *PFZ Properties v. General Accident Insurance Corp., supra*, a las págs. 913-914.

El procedimiento de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad. *PFZ Properties v. General Accident Insurance Corp.*, supra; *Col. de Ing. y Agrim. P.R. v. A.A.A.,*, 131 D.P.R. 735, 781 (1992). Ante una moción de sentencia sumaria que presenta hechos pertinentes en controversia, el tribunal no puede juzgar cuestiones de hechos, sino que su autoridad se circunscribe a determinar que hay cuestiones que deben dilucidarse en juicio. *Sucn. Meléndez v. DACO*, 112 D.P.R. 86, 89 (1982).

## IV

El negocio de seguros en Puerto Rico es uno investido de sustancial interés público. *PFZ Properties, Inc. v. General Accident Insurance Company P.R. Ltd.*, supra; *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405 (1993). Genéricamente hablando, el contrato de seguros obliga a indemnizar a otra persona, a pagarle o proveerle un beneficio específico o determinable al producirse un suceso incierto allí previsto. ■

Por otro lado, toda póliza de responsabilidad civil -seguro de contingencia o contra accidente-, incluye, en la parte pertinente a las condiciones, una Cláusula intitulada *"Asistencia y Cooperación del Asegurado"*, la cual es mejor conocida como Cláusula de Cooperación. Cruz Rolando, *Derecho de Seguros*, Puerto Rico, **Publicaciones J.T.S.**, 1999, pág. 204.

El término *"cooperación"* en una póliza significa suministrar al asegurador la información necesaria que permita a ésta determinar si existe de su parte una defensa legítima en relación con la reclamación que se le hace. *Cuebas Fernández v. P.R. American Ins. Co.*, 85 D.P.R. 626, 638 (1962); *Ocean Accident & Guarantee Corporation v. Lucas*, 74 F.2d. 115, 117; *Coleman v. New Amsterdam Casually Co.*, 160 N.E. 367, 369. La Cláusula de Cooperación le impone al asegurado la obligación de suministrar-al asegurador toda la información que pueda obtener razonablemente en relación con circunstancias bajo las cuales ocurrió el accidente, a fin de proveer una oportunidad al asegurador de preparararse para enfrentar cualquier reclamación o, como antes se reseñó, para determinar si tiene una defensa genuina. *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. 203 (1994); *Cuebas Fernández v. P.R. American Ins. Co.*, supra.

A instancias del propio asegurador, se le requiere al asegurado una cooperación o participación activa en casi todo lo concerniente a la preparación y participación en el pleito. Asimismo, el asegurado debe abstenerse voluntariamente de asumir cualquier obligación o responsabilidad en cuanto al accidente motivo de la demanda. Estas son condiciones obligatorias que el asegurado debe cumplir para que el asegurador pague. Cruz Rolando, *Derecho de Seguros*, supra, a las págs. 204-205; *Municipality of San Juan v. Great Ame. Ins. Co.*, 117 D.P.R. 632 (1986); *Valle v. Sucn. Wiscovitch*, 88 D.P.R. 86 (1963); *Cuebas Fernández v. P.R. American Ins. Co.*, supra.

Estas cláusulas requieren *"asistencia y cooperación de parte del asegurado durante el proceso investigativo, preparativo de la defensa y su comparecencia a vistas y juicios, que así le requiera el asegurador, referente a la acción civil incoada contra éste por las lesiones corporales y/o daños a la propiedad de un tercero"*. Cruz Rolando, *Derecho de Seguros*, supra, a la pág. 206.

El asegurado se obliga a cooperar con el asegurador, al ser requerido acudir a todas las vistas, ayudar a realizar cualquier transacción aportando evidencia y la comparecencia de testigos y cooperar en todo lo que se relaciona con la tramitación del pleito. *Id.; Morales v. Automatic Vending Machine, Inc.*, 103 D.P.R. 281, 284 (1975); *Insurance Co. of P.R. v. Tribunal Superior*, 100 D.P.R. 405 (1972). Ello implica cumplir en forma razonable y sustancial con los términos de la póliza y actuar con la mayor honestidad y buena fe. La necesidad de cooperar puede, incluso, surgir antes de que se entable cualquier acción judicial. El asegurado debe revelar justa, franca y verdaderamente, la información razonable pedida por el asegurador, de forma que le facilite determinar si existe o no una defensa genuina. 8 Appleman, *Insurance Law and Practice*, sec. 4774.

La Cláusula de Cooperación persigue proteger el interés del asegurador, tiende a evitar la colusión entre el asegurado y un lesionado, el fraude, y también la negativa del asegurado a ejecutar algún acto. Su violación por

el asegurado releva al asegurador de responsabilidad. *Coop. Seguros Múltiples de P.R. v. Lugo, supra.* Sobre el propósito de esta cláusula, se ha escrito que:

*"In addition, the purpose of a cooperation clause is to enable the insurer to obtain relevant information concerning the loss while the information is fresh, to enable it to decide upon its obligations, and to protect itself from fraudulent and false claims. Accordingly, a cooperation clause requires honest cooperation and telling the truth. Couch on Insurance 3D, sec. 199:5."*

De otro lado, para que ese deber de cooperación se estime incumplido, la actitud del asegurado tiene que ser de abierta y voluntaria obstrucción; la falta de carácter sustancial y material. (Enfasis suplido) Appleman, *supra*, secs. 4773 y 4776. En lo que respecta al incumplimiento de una Cláusula de Cooperación en una póliza, envuelve no solamente la buena fe del asegurado, sino, también, la buena fe del asegurador. El deber de cooperación aplica solamente cuando el asegurador y el asegurado se encuentran en una relación de confianza uno hacia el otro. Véase, *Couch on Insurance 3D*, sec. 199.9. En este sentido, se ha sostenido que:

*"A cooperation clause has, accordingly, been held not to come into play where-*

*There is no coverage for the claim. The insurer and insured are adversaries in a coverage dispute. There is any conflict of interest between the insurer and insured. Id, a la pág. 199-23."*

Un asegurador tiene que hacer una demostración sustancial de diligencia antes de descansar en la defensa de no-cooperación. *Coop. Seguros Múltiples de P.R. v. Lugo, supra.* La razón de tal exigencia responde a que, como se señalara en *Bowyer v. Thomas*, 423 S.E. 2d. 906 (W.Va. 1992):

*"From a practical standpoint, allowing an insurance company to easily deny coverage to an insured because of insubstantial failures to cooperate would unduly expose innocent injured members of the public to financial ruin and provide an unjustifiable windfall to the prejudiced insurer."*

Por tanto, la violación de dicha cláusula no conlleva *per se* el que se exima de responsabilidad al asegurador. *Valle v. Sucesión Wiscovitch, supra; Levy v. Indemnity Ins. Co. of North America*, 8 So.2d. 774 (La. 1942). El asegurador no quedará eximido de responsabilidad por cualquier falta de cooperación que a éste caprichosamente se le antoje. Cruz Rolando, *Derecho de Seguros, supra*, a la pág. 207.

Análogamente, se ha resuelto que, en ocasiones, el asegurado trasmite al asegurador una primera información incorrecta e incierta en cuanto a las circunstancias del accidente; pero ese hecho de por sí sólo no siempre constituye necesariamente una violación de la Cláusula de Cooperación, especialmente en ausencia de fraude, colusión o propósito de perjudicar al asegurador. *Cuebas Fernández v. P.R. American Ins. Co., supra.*

Es necesario, como requisito sustantivo, que la falta de cooperación del asegurado cause perjuicio al asegurador. (Enfasis suplido) *Valle v. Sucesión Wiscovitch*, 88 D.P.R. 86 (1986). Para que la falta de cooperación del asegurado constituya un eximente de la responsabilidad del asegurador, la misma debe ser en algún aspecto material y sustancial que le cause perjuicio. *Cuebas Fernández v. P.R. American Ins. Co., supra*, a la pág. 638. La narración sustancial en cuanto al aspecto fáctico de la ocurrencia que les suministre el asegurado a su asegurador, debe colocar a éste, no solamente en un estado de indefensión, sino que, en su defecto, debe también privarle de la oportunidad de transigir la reclamación como condición precedente para que el asegurador quede relevado de su responsabilidad indemnizatoria con arreglo a la póliza. ■ Es al asegurador a quien le recae el peso de la prueba para demostrar el grado de perjuicio sustancial sufrido. (Enfasis suplido) Cruz Rolando, *Derecho de Seguros, supra*, a la pág. 207.

En conclusión, para que un asegurador quede relevado, los actos o abstenciones de parte del asegurado tienen que causarle daños sustanciales. *Id.*, a la pág. 210. En *Cuevas Fernández v. P.R. American Insurance*

*Co., supra,* el Tribunal Supremo estableció parámetros que sirven como base para determinar si la falta de o el incumplimiento por parte del asegurado, independientemente de que sea intencional o fraudulento, de su obligación de cooperar con el asegurador, constituye un eximente o relevo de responsabilidad. El Lcdo. Rolando Cruz expresa, en su obra:

*"En primer lugar, surge con claridad del caso antes citado, que la narración sustancial en cuanto al aspecto fáctico de la ocurrencia que les suministre el asegurado a su asegurador, debe colocar al asegurador, no solamente en un estado de indefensión, sino que, en su defecto, debe también privarle de la oportunidad de transigir la reclamación como condición precedente para que el asegurador quede relevado de su responsabilidad indemnizatoria con arreglo a la póliza."* (Énfasis nuestro.) *Ibid.,* Cruz Rolando, *supra,* a la pág. 210.

A fin de que el asegurador pueda prosperar con relación a esta defensa, tiene que demostrar que actuó diligentemente al gestionar la cooperación del asegurado, que sus esfuerzos fueron razonablemente calculados para obtener esa cooperación y que la actitud subsiguiente del asegurado fue de voluntaria y consciente obstrucción. (Énfasis nuestro) *Coop. Seguros Múltiples de P.R. v. Lugo, supra.* Como requisito procesal, la falta de cooperación constituye una defensa que debe ser alegada afirmativamente. El asegurador tiene el peso de la prueba para demostrar que el asegurado no ha cumplido con la disposición contractual que le obliga a cooperar en la defensa del pleito. *Valle v. Sucn. Wiscovitch, supra.*

El Tribunal Supremo, en varias ocasiones, ha ratificado el principio de que las condiciones en la póliza de seguros de cooperación con el asegurador son enteramente válidas y su incumplimiento por el asegurado generalmente impide que pueda obtenerse indemnización por el asegurador. *Faulkner v. Nieves,* 76 D.P.R. 434 (1954); *Cuebas Fernández v. P.R. American Ins. Co., supra.* Sin embargo, este principio general tiene sus excepciones. A modo de ejemplo, el reclamante de daños y perjuicios puede protegerse contra esa defensa notificando a la compañía aseguradora de la ocurrencia del accidente, haciéndola parte demandada al iniciar su acción, emplazándola y entregándole copia de la demanda. *Colón v. Gobierno de la Capital,* 62 D.P.R. 25, 38 (1943).

Como podemos observar, tanto en nuestra jurisdicción como en la jurisdicción norteamericana, la condición específica de asistencia y cooperación del asegurado para con su asegurador, según consignada en la póliza de seguro de responsabilidad, es ostensiblemente válida y, dependiendo de las circunstancias del incumplimiento, pudiera impedir que el asegurador cumpla con su obligación o promesa indemnizatoria. No obstante, la conducta deliberada de parte del asegurado de no cooperar con el asegurador para impedir, entre otras cosas, que se determinen o comprueben oportunamente las circunstancias del accidente, no necesariamente resultará en cuestión de hechos a ser determinado por el juzgador. *U.S. Fidelity & Guaranty Co. v. Wyer,* 60 F.2d. 856 (C.C.C. 10th. Cir. 1932); *Couch on Insurance 3D,* sec. 199:19. Sobre este particular, se ha señalado:

*"Ordinarily, the facts and circumstances of a case determine whether an insurer or an insured by its respective actions or omissions breached the cooperation clause of a policy. Accordingly, these issues are generally questions of facts. On the other hand, when facts are undisputed, a court may decide an issue of cooperation as matter of law.*

*In order to have the issue decided as a matter of law, the party seeking summary judgment must establish that there are no issues of genuine facts to be decided by the trier of fact. Id., a las págs. 199-41-199-42."*

## V

Procedamos analizar la controversia ante nos, a la luz de la normativa reseñada.

En su escrito ante este Tribunal, Cigna alega que por causa del incumplimiento de Caribbean de la Cláusula de Cooperación de la póliza emitida por Cigna, ésta podría verse obligada a pagar por un asegurado que

incumplió con ese deber contractual, que siendo emplazado y con conocimiento de la demanda evadió la jurisdicción voluntariamente, previo al inicio del descubrimiento de prueba, y contra quien Cigna tiene una potencial exclusión de cubierta de seguro cuyo éxito depende de la evidencia que le pudiere suministrar Caribbean. Esta situación ha creado un supuesto estado de indefensión a Cigna, quien no puede confrontar las alegaciones y declaraciones prestadas por Ponce Rolling en beneficio de su reclamación.

La peticionaria Cigna, acompañó con su petición de *certiorari* numerosos documentos, entre los que se destacan aquellos fechados con posterioridad de 20 de abril de 1999, sobre las gestiones para localizar al señor Long.

Por su lado, Ponce Rolling, en su escrito ante este Tribunal, expone que los hechos no demuestran que Cigna pueda alegar en esta etapa de los procedimientos que ha sufrido un daño material y sustancial en su caso.

Además, señala que la alegación de que la falta de cooperación, "*ha causado que Cigna desconozca la versión de su asegurado, la identidad de posibles testigos, y obtenga el beneficio de una versión técnica del proceso mental que tuvo su asegurado, perito en reparación de hornos refractores, para realizar de la forma que hizo la reparación del horno del demandante*", es una general y conclusoria, pues Cigna no puede alegar perjuicio cuando desde el inicio de la reclamación tuvo conocimiento de ésta y se familiarizó con el caso en ocasión de efectuar con prontitud una investigación a través del Ajustador, con la cooperación del señor Long, y pudo concluir si Caribbean era responsable o no.

Asimismo, argumenta que Cigna ha tenido amplia oportunidad para deponer a los testigos oculares de Ponce Rolling, así como para evaluar la prueba de daños que se suministró como parte de la oferta de sentencia de 27 de enero de 2000, por lo que la ausencia del señor Long, en esta etapa del procedimiento, no constituye un perjuicio material y sustancial para la defensa de Cigna.

Por último, plantea que los hechos demuestran que Cigna intenta descansar en acontecimientos posteriores a junio de 1999 con el fin de argumentar que ha sido diligente en tratar de comunicarse con los principales accionistas de Caribbean. Con los anteriores argumentos, lo que intenta es elaborar, en esta etapa del caso, una táctica dirigida a llenar el expediente y no dirigidas en realidad a localizar al señor Long. Sostiene que Cigna estuvo en contacto con el Señor Long desde el comienzo del caso, cuando era relevante para su investigación y que de agosto de 1996 a junio de 1999 Cigna no realizó investigación efectiva alguna, ni comunicación con su asegurado Caribbean. En conclusión, entienden que Cigna está impedida por sus propios actos, debido a su falta de diligencia en la tramitación de la reclamación de Ponce Rolling, de levantar en esta etapa del pleito la defensa de falta de cooperación de Caribbean.

Un análisis del voluminoso expediente, nos lleva a concurrir con la determinación del foro de instancia de denegar la solicitud de sentencia sumaria. Veamos.

Los hechos demuestran de manera meridiana que Ponce Rolling presentó oportunamente su reclamación a Cigna en agosto de 1996. A tales efectos, Cigna contrató los servicios de un Ajustador a fin de que éste realizara la investigación correspondiente. En ese momento y con miras a cumplir su objetivo, dicho Ajustador realizó una investigación, tomó declaraciones a testigos oculares, fotografías de los hornos y recopiló documentos relativos a lo acontecido. Asimismo, el Ajustador entrevistó y le tomó declaración al señor Long, Presidente de Caribbean, obteniendo su versión de los hechos; y contrató los servicios del Ing. Jorge Colón, perito en calderas, a fin de que examinase los daños sufridos en los hornos.

Se desprende del Informe que sometiera el Ajustador, que Caribbean, a través de su Presidente, señor Long, cooperó con el Ajustador, suministrándole a éste la información y la documentación necesaria para su investigación. Véase, Informe del Ajustador, Apéndice II, págs. 201-224. Es, precisamente, a través de la información suministrada por Caribbean y del Informe del Ajustador, que Cigna estuvo en posición de poder

practicar con prontitud cualquier investigación necesaria.

Cabe destacar, en este momento, que el Informe del Ajustador recomendaba a Cigna que manejase la reclamación bajo la Cláusula de Reserva de Derechos al amparo de la exclusión J(6) de la póliza, defensa afirmativa que fue levantada por Cigna en la contestación a la demanda, y fundamento para la primera moción de sentencia sumaria, posteriormente denegada por el foro de instancia.

Durante dicho período y descansando en su defensa de reserva de derechos, Cigna no fue diligente. De hecho, nos resulta conflictivo que Cigna intente descansar en la defensa de falta de cooperación cuando desde un principio su posición fue la de negar cubierta. Recuérdese que, bajo esta premisa, cualquier deber de cooperación cesaba al negarse cubierta.

Abona a lo anterior, que en la contestación a la demanda presentada por Cigna se levantó como defensa afirmativa la Cláusula de Exclusión J(6). A fin de poder aludir dicha exclusión, Cigna tuvo que haber determinado con la ayuda de sus ajustadores que los trabajos realizados por Caribbean fueron llevados a cabo incorrecta y negligentemente. Usando como punto de partida lo anteriormente reseñado, este Tribunal entiende que el deber de cooperación de Caribbean cesó cuando Cigna levantó como defensa afirmativa la Cláusula de Exclusión J(6).

Por otro lado, llama nuestra atención que posterior a que el tribunal denegara la moción de sentencia sumaria comienzan unas negociaciones a fin de llegar a una posible transacción. Estas conversaciones transaccionales se realizaron desde octubre de 1998 a enero de 1999. Durante esta etapa, se desprende del expediente que Ponce Rolling suministró documentos que les fueron requeridos, teniendo acceso Cigna a evaluar la documentación relativa a los daños, y determinar, como lo hizo, si transigía o no el caso. Nada surge en el expediente que Cigna planteara que no podía llevar a cabo estas negociaciones, ya que Caribbean había abandonado la jurisdicción.

No es hasta junio de 1999, que Cigna levanta como defensa afirmativa la falta de cooperación de Caribbean. Somos de opinión que Cigna durante esta etapa del proceso no ha actuado con la diligencia que se requiere, intentando levantar una defensa tardíamente a fin de evitar asumir su responsabilidad. No podemos condonar esta acción.

Sin embargo, aun cuando se nos planteara que persistía el deber de cooperación, del expediente surge que Ponce Rolling entregó los documentos solicitados por Cigna al comienzo de esta acción. A su vez, se entrevistó al señor Long y a los empleados de Ponce Rolling. De hecho, ya desde la presentación del Informe del Ajustador se desprende que la versión de los empleados de Ponce Rolling y la del señor Long, son similares, con la única excepción del señor Leek, uno de los empleados, quién sostenía que el trabajo deficiente en la reparación del horno núm. 2, le causó daños físicos a sus piezas, mecanismo y estructura.

Posterior a presentarse la demanda, el 15 de septiembre de 1996, no fue hasta el 16 de septiembre de 1997 que Cigna contestó la demanda. Nada surge en el expediente que durante ese año, luego del informe del Ajustador, Cigna hubiese hecho alguna gestión para la defensa del caso. Durante dicho período y de entender Cigna que necesitaba su cooperación, el señor Long se encontraba disponible en la jurisdicción de Puerto Rico. De hecho, surge del expediente que la mudanza del señor Long fue en o cerca de verano de 1997. Dicha fecha es aproximadamente nueve (9) meses después de que alegadamente Cigna le cursara una misiva a Caribbean denominada Carta de Reserva de Derechos en donde le negaban cubierta por los daños reclamados. ■

No fue hasta junio de 1999 cuando, ya comenzado el descubrimiento de prueba, Cigna alega que advino en conocimiento de que el señor Long se encontraba fuera de la jurisdicción y que, como consecuencia, Caribbean no operaba en Puerto Rico. No fue hasta la vista celebrada el 29 de junio de 1999 que Cigna plantea por vez primera que podría verse afectada, cuando surge a todas luces que el asegurador estuvo en todo momento en

posición de poder realizar con prontitud cualquier investigación que entendiera necesaria.

Como podemos colegir de lo antes reseñado, para este Tribunal resulta insostenible poder acceder a los planteamientos de indefensión que hoy Cigna nos presenta. En el caso de epígrafe, Cigna tuvo ante sí todos los elementos necesarios para determinar si le asistía alguna defensa adicional y en posición de practicar cualquier investigación prontamente. Oportunidad que no aprovechó y de la cual, hoy, ella es la única responsable y perjudicada. Debe tener presente Cigna, que Ponce Rolling nunca tuvo esta oportunidad. Es por ello que no podemos acceder a la petición que nos hace Cigna; la verdad y la justicia han de ser siempre productos que emanen de todo juicio celebrado en nuestros tribunales, proceso al que las partes han acudir limpias de manos. No debe perderse de vista que el objetivo de todo procedimiento judicial, es el esclarecimiento de la verdad y sólo se hace justicia cuando se conoce la verdad. *Pueblo v. Ribas*, 83 D.P.R. 386, 389 (1961).

Es menester añadir que las peticionarias en su recurso citan varios casos federales que alegan abonan a su planteamiento. Hemos examinado dicha casuística y queda meridianamente claro que en los mismos se reflejan controversias distinguibles a la del caso de marras. Asimismo, es distinguible del caso de título una determinación de este Tribunal en *Quiñones del Castillo v. Rivera Siaca*. ■ En dicho caso, al igual que en varias de las decisiones federales, se resolvió que el asegurado había asumido una actitud de dejadez y falta de cumplimiento hacia las órdenes emitidas por el Tribunal desde el comienzo del pleito, lo que había creado un estado de indefensión en el asegurador. Nos reiteramos, en que la única dejadez que se desprende de nuestro expediente proviene de la peticionaria Cigna.

Para finalizar, cabe destacar que nuestra revisión, en casos como el que nos ocupa, debe circunscribirse a si el juez de instancia abusó de su discreción al negarse a disponer sumariamente del pleito. Como hemos reseñado, luego de un ponderado análisis del caso de autos, nada hay ante nuestra consideración que apunte hacia un abuso de discreción por parte del Tribunal de Primera Instancia, al denegar la solicitud de sentencia sumaria.

## VI

Por las razones ante esbozadas, denegamos la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2001 DTA 139

1. El recurso fue asignado en la Secretaría de este Tribunal como una apelación, lo cual resulta inexacto, tratándose de sentencias parciales que no constituyen una adjudicación final conforme a la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5; son, en realidad, resoluciones interlocutorias. *First Fed. Savs. v. Nazario*, 138 D.P.R. 872 (1995). Así fue presentado ante este Tribunal por los peticionarios.

2. Póliza Núm.: 95PR-502289.

3. Dicha línea reza: Este seguro cobija bajo un sólo formulario (CG-001) cuatro áreas principales de Exposición a Riesgo bajo la cubierta A-Lesiones Corporales y Daños Propiedad Ajena, a saber: (a) Predios y/o Operaciones (en curso); (b) Responsabilidad Vicaria; (c) Productos; (d) Operaciones Completadas.

4. Artículo 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102.

5. *Id.*

6. Dicha carta se menciona en el informe preparado por Walter Bothwell-Fuertes. Véase Apéndice II, pág. 236 y ss.

7. KLAN-97-01278.