Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CHEMEX CORPORATION<br><br>Apelante<br><br>v.<br><br>ALLIANZ GLOBAL CORPORATE & SPECIALTY (AGCS) MARINE INSURANCE COMPANY<br><br>Apelado | KLAN202300913 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. PO2019CV03281<br><br>Sobre: Incumplimiento Contractual, Daños Contractuales, Incumplimiento Aseguradoras Irma y María |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

## I.

El 13 de octubre de 2023, Chemex Corporation (Chemex o la parte apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI) el 29 de agosto de 2023, notificada y archivada en autos el 30 de agosto de 2023.[1] En el dictamen, el TPI declaró No Ha Lugar una *Demanda Enmendada* en reclamo de incumplimiento contractual y daños, promovida por Chemex en contra de Allianz Global Corporate & Specialty Marine Insurance Company (Allianz Global o la parte apelada).

El 17 de octubre de 2023, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 13 de noviembre de 2023 para que presentara su alegato en oposición.

---

[1] Apéndice de la *Apelación*, Anejo 25, págs. 251-273.

El 13 de noviembre de 2023, Allianz Global radicó un *Alegato de la parte demandada-apelada Allianz Global Corporate & Specialty (AGCS) Marine Insurance Company* en el que solicitó que confirmemos la *Sentencia* apelada y que condenemos a Chemex al pago de costas, gastos y honorarios de abogado por frivolidad y temeridad al promover la *Apelación*.

Con el beneficio de la comparecencia de las partes, pormenorizaremos los hechos atinentes a la *Apelación*.

**II.**

El caso de marras tiene su génesis el 19 de septiembre de 2019 cuando Chemex instó una *Demanda* en contra de Allianz Global por incumplimiento de contrato, dolo, daños contractuales y violación al Código de Seguros de Puerto Rico, Ley Núm. 77 de 1957, según enmendada, 26 LPRA secs. 101 *et seq.*, (Código de Seguros).[2] Según la reclamación, tras el paso del Huracán María el 20 de septiembre de 2017, sufrió daños una propiedad perteneciente a Chemex, la cual estaba asegurada en ese momento por una Póliza de seguros (Póliza) expedida por Allianz Global bajo el número CIM0922899. Según alegó, la parte apelante notificó los daños a la aseguradora y realizó una reclamación para recibir los beneficios bajo la Póliza, la cual recibió el número 80143837. Sin embargo, adujo que la misma no fue ajustada por la parte apelada. A su entender, Allianz Global no tenía base para rehusar el pago de las pérdidas pese a conocer el valor total de los daños, falló al no investigar expeditamente la reclamación y no hizo un intento de buena fe para ajustarla. También, argumentó que dichas acciones u omisiones podrían constituir prácticas desleales y mala fe y, en vista de ello, se reservó el derecho a solicitar remedios por violaciones al Artículo 27.164 del Código de Seguros, *supra* sec.

---

[2] Íd., Anejo 1, págs. 1-8.

2716d. En consecuencia, le solicitó al TPI que dictara sentencia a su favor y le ordenara a Allianz Global sufragar la totalidad de los daños a la propiedad cubierta por la póliza de seguro; los daños contractuales, las costas judiciales y honorarios razonables, conforme al inciso (4) del Artículo 27.164 del Código de Seguros, *supra*; y las costas y honorarios de abogado producto del caso.

El 9 de julio de 2020, Allianz Global presentó una *Moción solicitando desestimación de causa de acción de mala fe, solicitando exposición más definida sobre causa de acción de incumplimiento de contrato y solicitando eliminación de expresiones inflamatorias* en la que arguyó que el TPI debía desestimar la causa de acción presentada al amparo del Artículo 27.164 del Código de Seguros, *supra*, porque incumplió con el requisito de notificación a la Oficina del Comisionado de Seguros (OCS) y a la aseguradora, que le impone el estatuto.[3] Asimismo, solicitó que se le ordenara a la parte apelante especificar los daños reclamados y a eliminar una sección de la *Demanda* por tratarse de un trasfondo redundante, inmaterial e impertinente, traído con el propósito de inflamar pasiones en contra de la industria de seguros.

El 7 de agosto de 2020, Chemex radicó una *Demanda enmendada* en la que eliminó las alegadas expresiones inflamatorias de la reclamación, así como delineó las alegaciones en cuanto a la causa de acción por incumplimiento de contrato y los daños sufridos tras el paso del Huracán María.[4]

Ese mismo día, también presentó una *Oposición a moción de desestimación* en la que planteó que la petición desestimatoria de Allianz Global se tornó académica tras la radicación de la *Demanda Enmendada*.[5]

---

[3] Íd., Anejo 4, págs. 13-23.
[4] Íd., Anejo 5, págs. 24-29.
[5] Íd., Anejo 6, págs. 30-31.

El 10 de agosto de 2020, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la moción de desestimación promovida por Allianz Global.[6]

El 11 de septiembre de 2020, Allianz Global presentó una *Moción solicitando desestimación de causa de acción de dolo bajo el artículo 1060 del Código Civil, 31 LPRA §3024* en la que argumentó que las alegaciones de Chemex respecto al dolo contractual eran realmente imputaciones de violaciones al Artículo 27.164 del Código de Seguros, *supra*.[7] Por lo tanto, planteó que el Código de Seguros era la ley especial para atender dichas alegaciones y, en base a ello, la parte apelante no podía instar una reclamación bajo estas disposiciones. Además, arguyó que tampoco las podía promover al amparo del entonces vigente Artículo 1060 del Código Civil de Puerto Rico de 1930 (Código Civil de 1930), 31 LPRA ant. sec. 3024.

El 18 de octubre de 2023, Chemex radicó una *Oposición a moción de desestimación parcial* en la que argumentó que no procedía la desestimación dado que, cuando incluyó referencias al Código de Seguros, *supra*, en la *Demanda Enmendada*, no pretendía levantar una causa de acción bajo dicho estatuto, sino establecer un marco de interpretación del contenido y del alcance de las obligaciones generadas por el contrato de seguros.[8] También, planteó que, en todo caso, los remedios provistos por el Código de Seguros, *supra*, son adicionales a las causas de acción reclamadas en este caso y, por tanto, el presente pleito era independiente y separado a estos.

El 19 de julio de 2021, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la petición desestimatoria promovida por

---

[6] Íd., Anejo 7, pág. 32.
[7] Íd., Anejo 9, págs. 35-40.
[8] Íd., Anejo 10, págs. 41-63.

Allianz Global.[9] En consecuencia, le concedió un término de veinte (20) días a la parte apelada para contestar la *Demanda Enmendada.*

Inconforme con la decisión del foro primario, el 13 de agosto de 2023, Allianz Global acudió ante esta Curia mediante un recurso de *Certiorari* en el que cuestionó la determinación, el cual recibió el alfanumérico KLCE202100992. El 9 de septiembre de 2021, un panel hermano denegó la expedición del recurso.[10] Luego de que la parte apelada solicitara reconsideración, el 29 de septiembre de 2023, el mismo panel rechazó dicha petición.[11] Posteriormente, el 14 de enero de 2022, el Tribunal Supremo declaró No Ha Lugar la petición de *Certiorari* presentada por la parte apelada ante el más alto foro.[12]

El 9 de agosto de 2021, Allianz Global presentó una *Contestación a Demanda Enmendada* en la que negó la mayoría de las alegaciones esbozadas por Chemex.[13] Asimismo, planteó que atendió oportunamente la reclamación, la cual fue cerrada porque la cantidad total de pérdidas no excedió el deducible aplicable bajo la Póliza. Por consiguiente, solicitó que se desestimara el pleito y que se condenara a Chemex al pago de costas, gastos y honorarios de abogado por temeridad.

Tras múltiples trámites procesales, el 28 de abril de 2023, Allianz Global radicó una *Moción solicitando sentencia sumaria* en la que solicitó la desestimación con perjuicio de la *Demanda Enmendada*, basándose en que, concluido el descubrimiento de prueba, era evidente que Chemex carecía de prueba para sustentar sus alegaciones.[14]

---

[9] Id., Anejo 12, pág. 66.
[10] Íd., Anejo 16, págs. 82-86.
[11] Íd., pág. 89.
[12] Íd., pág. 92.
[13] Íd., Anejo 14, págs. 70-75.
[14] Íd., Anejo 20, págs. 98-143.

A su juicio, el pleito únicamente presentaba los siguientes asuntos litigiosos: (1) si Allianz Global incumplió con los deberes y responsabilidades establecidos por la Póliza; (2) si la parte apelada incumplió con los deberes y responsabilidades impuestos por el Código de Seguros, *supra*, en cuanto al manejo de las reclamaciones; (3) si la parte apelada incurrió en dolo; y (4) si Chemex fue temeraria al presentar la *Demanda*. Respecto a estas, arguyó que no solo Chemex carecía de prueba para demostrar el alegado incumplimiento de Allianz Global, sino que, como cuestión de hechos, fue la parte apelante la que incumplió con los términos de la Póliza.

En síntesis, la parte apelada alegó la siguiente relación de hechos: (1) una vez presentada la reclamación de Chemex por los daños causados a un "tráiler" utilizado como oficina, Allianz Global la atendió y, luego, determinó cerrarla debido a que los daños reportados no superaron el deducible de la Póliza, pero dejó abierta la posibilidad de que la parte apelante sometiera evidencia de daños adicionales; (2) transcurrido casi un año de dicha comunicación, el 13 de marzo de 2019, la corredora de seguros de Chemex le informó a Allianz Global que existían daños adicionales y, ese mismo día, la parte apelada acusó de recibo la comunicación y quedó a la espera de evidencia de nueva información; (3) posteriormente, el 30 de abril de 2019, la parte apelada le dio seguimiento a la comunicación de la corredora sin que esta respondiera; (4) luego, el 17 de mayo de 2019, le envió otra comunicación a Chemex, solicitando evidencia adicional y concediendo hasta el 1 de junio de 2019 para recibirla; (5) esa última comunicación nunca fue contestada por Chemex a través de su corredora de seguros. A partir de esa situación, esbozó que se debía concluir que Allianz Global acogió la reclamación, evaluó los daños, notificó el cierre de la reclamación y le otorgó a Chemex oportunidad de presentar evidencia adicional de daños. En

contraste, según planteó, la parte apelante no cooperó con el proceso de la reclamación y, todavía más, incumplió con sus obligaciones bajo la Póliza. En adición, sostuvo que Chemex incurrió en temeridad, desidia y conducta contumaz y, por lo tanto, debe ser condenada con la imposición de costas y honorarios de abogado.

El 19 de mayo de 2023, Chemex presentó una *Oposición a moción solicitando sentencia sumaria* en la que solicitó al TPI que declarara No Ha Lugar la *Moción solicitando sentencia sumaria* y ordenara la continuación de los procesos.[15] Por un lado, planteó que la moción no cumplió con los requisitos establecidos por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Respecto a ello, adujo que los anejos presentados en apoyo a la moción eran inadmisibles en evidencia por no haber sido autenticados. Por otro lado, arguyó que existían controversias de hechos materiales que impedían que se dictara sentencia sumaria, a la vez que alegó que la solicitud era contraria al interés público protegido por el Código de Seguros, *supra.* A su entender, estaba en controversia: (1) la valoración de las pérdidas sufridas por Chemex; (2) si Allianz Global violó el Código de Seguros al negarse a reconocer y ajustar los daños que sufrió Chemex, aún cuando poseía un informe pericial que los estimó; (3) si Allianz Global incumplió con sus obligaciones bajo al Póliza; y (4) si la negativa de Allianz Global a hacer un ajuste rápido, justo, equitativo y de buena fe constituye una violación a las obligaciones impuestas por el Código de Seguros y sus Cartas Normativas. En síntesis, esbozó que Allianz Global tenía una obligación de investigar, inspeccionar, estimar y ajustar los daños y no lo hizo, puesto que, desde 2021, tuvo en su posesión un informe pericial junto a cotizaciones para las reparaciones de los daños reclamados.

---

[15] Íd., Anejo 22, págs. 145-224.

El 12 de julio de 2023, Allianz Global radicó una *Réplica a oposición a moción solicitando sentencia sumaria* en la que denunció que Chemex, en su escrito, abandonó las alegaciones de la *Demanda Enmendada* y, en su lugar, intentó argumentar que la parte apelada incumplió obligaciones contractuales en el periodo posterior a la presentación de la *Demanda*.[16] Todavía más, señaló que los documentos que acompañaron su *Moción solicitando sentencia sumaria* fueron producidos por Chemex como parte del descubrimiento de prueba. Por ello, arguyó que la parte apelante no podía oponerse a su admisibilidad en esta etapa. Además, planteó que el pleito comenzó el 19 de septiembre de 2019 y, por lo tanto, el informe pericial y las cotizaciones fueron producidos con posterioridad a la presentación de la *Demanda* y no como parte del trámite previo de la reclamación. Es decir, en el proceso de ajuste de la reclamación, Chemex no le suministró a Allianz Global la evidencia ni alguna otra prueba para constatar los daños adicionales.

El 29 de agosto de 2023, el TPI emitió la *Sentencia* apelada en la que declaró No Ha Lugar la *Demanda Enmendada*.[17] El dictamen fue notificado al día siguiente. En concreto, el foro primario consignó los siguientes hechos incontrovertidos:

1. El día 20 de septiembre de 2017 el Huracán María pasó por Puerto Rico.
2. Para el 20 de septiembre de 2017 CHEMEX CORPORATION mantenía en vigor una póliza de seguros de propiedad número CIM0922899 (en lo sucesivo la Póliza) con Allianz Global Corporate & Specialty (AGCS) Marine Insurance Company la cual está sujeta a sus cláusulas, términos, condiciones, exclusiones, endosos y límites.
3. El periodo de vigencia de la Póliza es desde el 17 de agosto de 2017 hasta el 17 de agosto de 2018.
4. Como consecuencia del paso del huracán María, la Parte Demandante presentó una reclamación bajo la Póliza a la que se le asignó el número 8014383.
5. En o alrededor del 16 de noviembre de 2017, Chemex, por conducto de sus corredores de seguros Ronald B. Castro and Associates, Inc., le notificó a AGCS de una posible reclamación a raíz del paso del Huracán María

---

[16] Íd., Anejo 23, págs. 225-246.
[17] Íd., Anejo 25, págs. 251-273.

por la zona de Puerto Rico. Al momento de notificar de esta potencial pérdida, Ronald B. Castro and Associates, Inc. no detalló la misma ni produjo información adicional relacionada a la misma.

6. El 28 de diciembre de 2017, AGCS, por conducto del Sr. Lucas McVey, se comunicó con el corredor de seguros de Chemex y solicitó información relacionada a la supuesta pérdida de Chemex. En específico, AGCS solicitó una descripción del alcance de la pérdida, estimados de reparación y localización de los equipos dañados.

7. El 3 de abril de 2018, AGCS, nuevamente por conducto del Sr. Lucas McVey, cursó una comunicación en seguimiento a los corredores de seguro de Chemex solicitando, nuevamente, información relacionada a su supuesta pérdida.

8. El mismo 3 de abril de 2018, Ronald B. Castro and Associates, Inc. le notificó a AGCS que ya no era corredor de seguros Chemex.

9. En o alrededor del 2 de mayo de 2018, AGCS, nuevamente por conducto del Sr. Lucas McVey, se comunicó con la Sra. María Nadal de Chapel & Associates, Inc., entidad que sustituyó a Ronald B. Castro and Associates, Inc. como corredores de seguros de Chemex. AGCS solicitó de la Sra. Nadal, nuevamente, información detallada de la supuesta pérdida de Chemex.

10. En o alrededor del 12 de junio de 2018, Chemex, por conducto de la Sra. María Nadal de Chapel & Associates, Inc., indicó a AGCS que el único daño sufrido por Chemex a raíz del paso del Huracán María fue a un "trailer" utilizado por Chemex como espacio de oficina.

11. El **25 de julio de 2018**, AGCS procedió a enviar una misiva formal a Chemex notificándole que, en la medida que el único daño siendo reclamado por Chemex no excedía los deducibles aplicables a su póliza con AGCS, se estaría cerrando la reclamación. AGCS le informó que, de Chemex querer reabrir su reclamación, podía hacerlo. La misiva de AGCS de 25 de julio de 2018 expresó: "If you decide to re-open your claim in the future or find additional damage related to this occurrence, please notify your agent or our office and we will re-open your claim and resume our investigation".

12. Tras el cierre de la reclamación que notificara AGCS, el 25 de julio de 2018, representantes de la parte demandante se comunicaron con AGCS para aducir que tenían información relacionada a pérdidas adicionales.

13. El **13 de marzo de 2019**, Chemex, por conducto de la Sra. María Nadal de Chapel & Associates, Inc., indicó a AGCS que supuestamente existían daños adicionales y que sometería la información relacionada a estas pérdidas en fecha futura.

14. Entre las fechas de 30 de abril de 2019 y 17 de mayo de 2019, AGCS, esta vez por conducto del Sr. Tony Ávila, le cursó varias comunicaciones a la Sra. la Sra. María Nadal de Chapel & Associates, Inc. indicándole que no se había recibido información adicional sobre estas supuestas pérdidas adicionales y advirtiéndole que, **de no recibirse información adicional para el 1 de junio de 2019, AGCS procedería a cerrar la reclamación nuevamente.**

15. La Sra. María Nadal de Chapel & Associates, Inc., corredora de seguros de Chemex, no contestó los correos de seguimiento de AGCS de 30 de abril de 2019 y 17 de mayo de 2019, ni tampoco envió información adicional alguna a AGCS relacionada a las supuestas pérdidas adicionales de AGCS.

16. Concluido el descubrimiento de prueba en el caso de autos, la parte demandante no produjo evidencia alguna de que, <u>previo a la presentación de la Demanda que dio origen al presente caso</u>, le sometió a AGCS evidencia de supuestos daños más allá "trailer" utilizado por Chemex como espacio de oficina. Énfasis y subrayado en el original.

A base de estos hechos, concluyó que Allianz Global no incurrió en incumplimiento contractual alguno, puesto que, considerados los daños que le habían sido reclamados, determinó correctamente que los mismos no excedían el deducible de la Póliza. A su juicio, no surgió evidencia que demostrara que Chemex cuestionara la conclusión de la aseguradora, sino que, **siete (7) meses después del cierre de la reclamación**, indicó que tenía daños adicionales y que sometería información para evidenciarlo en el futuro, **lo cual no hizo.** Así, razonó que no había evidencia para establecer que la parte apelante cooperó en el trámite de la reclamación, ni siquiera para señalar los alegados daños adicionales para que pudieran ser investigados. Por todo ello, dictaminó que Allianz Global no incurrió en dolo y que, por el contrario, actuó en conformidad con el Código de Seguros al resolver la reclamación mediante el cierre por inactividad del reclamante.

El 14 de septiembre de 2023, Chemex presentó una *Moción de reconsideración* en la que solicitó al foro primario reconsiderar la *Sentencia.*[18]

El 15 de septiembre de 2023, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la petición de reconsideración.[19]

El 13 de octubre de 2023, Chemex radicó la presente *Apelación* ante esta Curia en la que solicitó que revoquemos la *Sentencia* dictada por el TPI. En su recurso, la parte apelante le imputó al TPI la comisión de los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA POR EXISTIR HECHOS

---

[18] Íd., Anejo 28, págs. 278-296.
[19] Id., Anejo 30, pág. 303.

MATERIALES EN CONTROVERSIA Y NO PROCEDER CONFORME A DERECHO.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA Y NO TOMAR MEDIDAS MENOS DRÁSTICAS, EN PROTECCIÓN DEL ASEGURADO EN UN CASO DE ALTO INTERÉS PÚBLICO, SIN SURGIR QUE LA ASEGURADORA HUBIESE CUMPLIDO CABALMENTE CON SUS DEBERES Y OBLIGACIONES HACIA EL ASEGURADO NI QUE HUBIESE LOGRADO ESTABLECER PERJUICIO SUSTANCIAL ALGUNO.

En apoyo de su petición, argumentó que de los documentos que obran en el expediente del caso surge que: (1) Allianz Global incumplió con sus deberes bajo el Código de Seguros; (2) que la parte apelada no logró establecer que la falta de cooperación de Chemex le causó perjuicio suficiente a la aseguradora como para relevarla de responsabilidad; (3) Allianz Global no implementó métodos razonables para la rápida investigación de la reclamación; (4) tampoco intentó de buena fe llevar a cabo un ajuste rápido, justo y equitativo de la reclamación; (5) la aseguradora no podía requerir condiciones irrazonables a Chemex para realizar el ajuste, dilatarlo o negar el pago bajo el pretexto de información insuficiente cuando se podía obtener mediante métodos ordinarios de investigación, conforme al Código de Seguros y su Reglamento; y (6) tampoco envió personal a inspeccionar los daños sufridos. En suma, a su juicio, la tardanza u omisión en notificar detalles de daños adicionales a la aseguradora no era prueba suficiente, por si sola, para justificar la desestimación de la *Demanda Enmendada.*

El 13 de noviembre de 2023, Allianz Global radicó un *Alegato de la parte demandada-apelada Allianz Global Corporate & Specialty (AGCS) Marine Insurance Company* en el que argumentó a favor de confirmar la *Sentencia* apelada y de la imposición de sanciones a Chemex por frivolidad y temeridad. Según esbozó, Chemex no pudo, ni posee prueba para, evidenciar que Allianz Global actuó en contravención de la Póliza o del Código de Seguros. En contraste, planteó que la prueba producida en el descubrimiento de prueba

demostró lo contrario: que, antes del litigio, la parte apelante no presentó una reclamación por daños en exceso del deducible de la Póliza.

En cuanto a los hechos, recalcó que Allianz Global atendió la reclamación de la parte apelante según la información provista inicialmente – el 25 de julio de 2018 – informándole que podría reabrir la reclamación si existía un daño adicional. Luego, el 13 de marzo de 2019, la parte apelante informó que existían daños adicionales, pero quedó pendiente de someter la evidencia de ellos, según adujo. Ante ello, alegó que el 30 de abril y el 17 de mayo de 2019, le dio seguimiento a la comunicación, apercibiendo a la parte apelante de que cerraría la reclamación de no recibirse contestación, lo cual hizo después de que Chemex no contestara ni proveyera información adicional sobre los daños.

En los méritos, la parte apelada sostuvo que Chemex no controvirtió estos hechos materiales a la controversia, los cuales alegó que demuestran que Allianz Global cumplió con todas sus obligaciones y que, por el contrario, fue la parte apelante la que incumplió sus deberes. Por último, arguyó que la presentación de la *Apelación* constituyó una secuela del afán de la parte apelante en reclamar daños que no puede probar y alargar un litigio basado en una premisa falsa. Por lo tanto, argumentó que procedía la imposición de sanciones ante semejante conducta temeraria y frívola.

En consideración de los errores imputados al foro primario, exponemos las normas jurídicas atinentes.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios

civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. JF Montalvo***, 189 DPR 414, 430 (2013).

Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

Sin embargo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994).

El promovente de este recurso deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

De acuerdo con las Reglas 36.1 y 36.2 de Procedimiento Civil, *supra,* R. 36.1 & 36.2, el promovente de la moción de sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Además, según la Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a), tendrá que desglosar lo siguiente:

> 1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

En cambio, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

En este sentido, el promovido tiene el deber de controvertir la prueba presentada por la parte promovente de la moción de sentencia sumaria. Este no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3; **SLG Zapata-Rivera v. JF Montalvo**, supra; **Ramos Pérez v. Univisión**, 178 DPR 200, 215 (2010); **Cruz Marcano v. Sánchez Tarazona**, 172 DPR 526, 550 (2007). En otras palabras, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que están en disputa". **León Torres v. Rivera Lebrón**, 204 DPR 20, 44 (2020).

Ahora bien, la moción de sentencia sumaria debe resolverse conforme al derecho sustantivo aplicable, y si de las propias alegaciones, admisiones o declaraciones juradas surge alguna

controversia, no procede disponer del asunto sumariamente. ***Ortiz v. Holsum***, 190 DPR 511, 525 (2014). En este sentido, al evaluar los documentos presentados por las partes, el tribunal deberá utilizar el principio de liberalidad a favor del opositor de la moción. ***Ramos Pérez v. Univisión***, supra, págs. 216-217. De haber dudas sobre la existencia de controversias de hechos materiales, deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015). Esto, con el propósito de evitar que una de las partes se vea impedida de ejercer su día en corte. Íd.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo estableció el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o concesión de una moción de sentencia sumaria. Dictaminó que: "[e]l Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de Sentencia Sumaria". Íd., págs. 21-22. La revisión que realice el foro apelativo deberá ser *de novo* y estará limitado a solamente adjudicar los documentos presentados en el foro apelado. ***Vera v. Dr. Bravo***, supra, págs. 334-335. Todas las inferencias permitidas deberán ser a favor de la parte oponente a la moción de sentencia sumaria, de forma que se evalúe el expediente de la manera más favorable hacia dicha parte. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118. Además, deberá constatar que las partes cumplan con los requisitos de forma que dispone la Regla 36, *supra*, tanto en la moción de sentencia sumaria, como en la oposición, y deberá revisar si existen hechos materiales en controversia. Íd. Si existiesen, el foro apelativo tendrá que exponer los hechos en controversia y los que no, como dispone la Regla 36.4, *supra.* Si el Tribunal Apelativo no encuentra hechos controvertidos, deberá revisar *de novo* si el foro inferior aplicó correctamente el derecho. Íd., pág. 119.

**B.**

En nuestra jurisdicción, conforme ha sido pautado por nuestro Tribunal Supremo, la industria de los seguros está revestida de un alto interés público, juega un crucial papel económico porque le permite a personas y negocios proteger sus recursos transfiriendo el impacto de ciertos riesgos a cambio del pago de una prima y, por ello, ha sido extensamente reglamentada por el Estado. *Maderas Tratadas v. Sun Alliance,* 185 DPR 880, 896-897 (2012).

De acuerdo con la jurisprudencia, la póliza es el documento escrito en el que se plasman los términos que rigen el contrato de seguro, los cuales constituyen la ley entre las partes. Íd., pág. 897. Este, según lo define el Art. 1.020 del Código de Seguros, 26 LPRA sec. 102, es aquel contrato "mediante el cual una persona se obliga a indemnizar a otra, a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". En otras palabras, a cambio de una prima, el asegurador se compromete a indemnizar a un tercero, el asegurado o reclamante, por una pérdida contingente a que ocurra un evento futuro incierto e imprevisto. *Maderas Tratadas v. Sun Alliance,* supra, pág. 897 (citando a R. Cruz, Derecho de Seguros, San Juan, Pubs. J.T.S., 1999, pág. 387).

Entre los tipos de seguros regulados por el Código de Seguros, *supra*, se encuentra el seguro de propiedad. En específico, el Art. 4.040 del Código de Seguros, 26 LPRA sec. 404, define el seguro de propiedad como "[...] el seguro de toda clase de bienes raíces o muebles, e interés sobre los mismos, contra pérdida o daños por cualquier riesgo o causa, y contra pérdida como consecuencia de tales pérdidas o daños, que no sea una responsabilidad legal no contractual por tales pérdidas o daños".

En otro extremo, en adición a que la Póliza constituya la ley entre las partes y establezca los términos del contrato de aseguro, el

Art. 11.250 del Código de Seguros, *supra* sec. 1125, reglamenta la interpretación de las pólizas al disponer específicamente que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". En este tema, las normas generales del Código Civil sobre la interpretación de los contratos solo serán aplicables de manera supletoria. ***Banco de la Vivienda v. Pagán Ins. Underwriters,*** 111 DPR 1, 6 (1981).

A lo anterior se añade que, en nuestra jurisdicción, los contratos de seguros son contratos de adhesión y, por ello, como norma general, sus disposiciones deben ser interpretadas liberalmente a favor del asegurado. ***Maderas Tratadas v. Sun Alliance,*** supra, págs. 898-899. Ahora bien, esta norma no es de aplicación cuando las cláusulas en cuestión son claras y libres de ambigüedad, en cuyo caso se hará valer la clara intención de las partes y el asegurado estará obligado por los términos incluidos en el contrato. Íd., pág. 899. En este contexto, se entiende por términos claros aquellos que son bastante lúcidos para ser entendidos en un único sentido, sin lugar a duda, ni controversias ni diversidad de interpretaciones ni necesitar razonamientos o demostraciones impugnables para su comprensión. ***S.L.G. Francis-Acevedo v. SIMED***, 176 DPR 372, 387 (2009) (citando a ***Sucn. Ramírez v. Tribl. Superior***, 81 D.P.R. 357, 361 (1959)).

Por otra parte, el Capítulo 27 del Código de Seguros, *supra*, establece las prácticas desleales y fraudes prohibidos en la industria de los seguros. De acuerdo con el Art. 27.010 del Código de Seguros, *supra* sec. 2701, el propósito de dicho capítulo es regular las prácticas comerciales en el negocio de seguros, definiendo y prohibiendo todas aquellas que constituyen métodos desleales de

competencia, o actos o prácticas engañosas. En específico, el Art. 27.161 del Código de Seguros, *supra* sec. 2716a, dispone que:

> En el ajuste de reclamaciones ninguna persona incurrirá o llevará a cabo, cualquiera de las siguientes prácticas desleales:
> **(1)** Hacer falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia.
> **(2)** Dejar de acusar recibo y no actuar con razonable diligencia dentro de los noventa (90) días, luego de radicada y notificada una reclamación bajo los términos de una póliza.
> **(3)** Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.
> **(4)** Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.
> **(5)** Rehusar confirmar o denegar cubierta de una reclamación dentro de un término razonable luego de haberse completado la declaración de pérdida.
> **(6)** No intentar de buena fe de llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.
> **(7)** Obligar a los asegurados o reclamantes a entablar pleitos para recobrar bajo los términos de una póliza, porque se le ha ofrecido al asegurado o reclamante una cantidad sustancialmente menor que la cantidad que podría ser recobrada finalmente en un litigio o porque se le ha negado incorrectamente la cubierta bajo los términos de la póliza.
> [...]
> **(12)** Rehusar transigir rápidamente una reclamación cuando clara y razonablemente surge la responsabilidad bajo una porción de la cubierta, con el fin de inducir a una transacción bajo otra porción de la cubierta de la póliza.
> [...]
> **(17)** Negar el pago de una reclamación bajo el pretexto de información insuficiente cuando ésta era capaz de ser obtenida bajo métodos ordinarios de investigación.
> [...]
> **(20)** Requerir condiciones irrazonables al asegurado o reclamante para realizar el ajuste de la reclamación o dilatar el mismo.
> [...]

De considerar que una aseguradora incurrió en una de estas prácticas prohibidas y de entender que ello le ha causado daños, cualquier persona puede incoar una acción civil en contra de la aseguradora, en virtud del inciso (1) del Art. 27.164 del Código de Seguros, *supra* sec. 2716d. Ahora bien, el inciso (3) del mismo artículo le impone al agraviado la condición previa de notificar la violación por escrito tanto al Comisionado de Seguros como a la aseguradora. Íd. Por último, el inciso (6) de dicho artículo preceptúa lo siguiente:

> El recurso civil especificado en este Artículo no sustituye cualquier otro recurso o causa de acción prevista en virtud de cualquier otro estatuto o de conformidad con las leyes de Puerto Rico o las leyes federales aplicables. **Cualquier persona podrá reclamar bajo las disposiciones generales referente a materia de contratos o derecho extracontractual o daños y perjuicios, según contemplados en el Código Civil de Puerto Rico. Sin embargo, los tribunales o foros adjudicativos están impedidos de procesar y adjudicar ambos recursos o causas de acción**. Los daños recuperables de conformidad con este Artículo incluirá aquellos daños que son un resultado razonablemente previsible de una violación específica de este Artículo por la aseguradora autorizada y puede incluir una adjudicación o juicio por un monto que exceda los límites de la póliza. (Énfasis nuestro).

De esta forma, se podrá reclamar el incumplimiento del contrato de seguro o, lo que es lo mismo, la inobservancia de los términos de una póliza al amparo de los artículos aplicables del Código Civil de Puerto Rico. Esto, además, es cónsono con el carácter contractual de los seguros.

Entretanto, el Art. 27.162 del Código de Seguros, *supra* sec. 2716b, provee lo siguiente:

> (1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.
> (2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de este Artículo, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.
> (3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.

Asimismo, el Art. 27.163 del Código de Seguros, *supra* sec. 2716c, dispone lo siguiente sobre los métodos para resolver una reclamación:

> (1) El pago total de la reclamación.
> (2) La denegación escrita y debidamente fundamentada de la reclamación.
> (3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. Disponiéndose que el asegurador notificará inmediatamente al reclamante del cierre de la misma, salvo que en tales circunstancias el cierre será sin perjuicio de permitir nuevamente la presentación de dicha reclamación.

Respecto a las cláusulas de cooperación por parte del asegurado, nuestro Tribunal Supremo ha expresado que este tipo de disposiciones tienen como propósito proveerle la oportunidad a la aseguradora de prepararse para atender cualquier reclamación o para determinar si tiene una defensa genuina. ***Coop. Seguros Múltiples de PR v. Lugo,*** 136 DPR 203, 212 (1994) (citando a ***Cuebas Fernández v. P.R. American Ins. Co.,*** 85 DPR 626, 638 (1962)). Respecto a las obligaciones del asegurado en este respecto, el más alto foro ha resuelto:

> [...] "[e]l asegurado se obliga a cooperar con la aseguradora, *al ser requerido* acudirá a todas las vistas, le ayudará a realizar cualquier transacción aportando evidencia y la comparecencia de testigos y cooperará en todo lo que se relaciona con la tramitación del pleito". (Énfasis suplido.). Ello implica cumplir en forma razonable y sustancial con los términos de la póliza y actuar con la mayor honestidad y buena fe. La necesidad de cooperar puede, incluso, surgir antes de que se entable cualquier acción judicial. El asegurado debe revelar justa, franca y verdaderamente la información razonable pedida por el asegurador, de forma que le facilite determinar si existe o no una defensa genuina. Para que ese deber se estime incumplido, la actitud del asegurado tiene que ser de abierta y voluntaria obstrucción; la falta, de carácter sustancial y material. Íd., pág. 213. (citas omitidas).

Ahora bien, el incumplimiento del asegurado con una condición que requiera su cooperación, en ausencia de perjuicio, no libera de responsabilidad al asegurador. Íd., pág. 214.

### C.

En la etapa apelativa, la Regla 85 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 85, rige la imposición de costas y sanciones a las partes en pleitos ante su consideración. En concreto, la referida regla dispone lo siguiente:

> (A) Las costas se concederán a favor de la parte que prevalezca, excepto en aquellos casos en que se disponga lo contrario por ley.
>
> (B) Si el Tribunal de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado o abogadas las costas, los gastos, los honorarios de abogado y la sanción económica que estime apropiada, la cual deberá

reflejar, en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Apelaciones.

El tribunal impondrá iguales medidas a la parte promovida o a su abogado cuando determine que la contestación al recurso es frívola o que ha sido presentada para dilatar los procedimientos.

(C) El Tribunal de Apelaciones impondrá costas y sanciones económicas en todo caso y en cualquier etapa a una parte, a su abogado o a su abogada por la interposición de recursos frívolos o por conducta constitutiva de demora, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia.

(D) A discreción del Tribunal de Apelaciones, la sanción económica podrá ser a favor del Estado, de cualquier parte o de su abogado o abogada.

(E) Los dictámenes del Tribunal de Apelaciones bajo esta regla, deberán ser debidamente fundamentados.

Dentro del marco de interpretación de la frivolidad y la temeridad, nuestro más alto foro ha expresado que la temeridad no procede: (1) en los litigios que envuelven planteamientos complejos y novedosos no resueltos en la jurisdicción; (2) cuando la parte responde a una apreciación errónea del derecho sin que existan precedentes vinculantes; o (3) cuando existe una desavenencia honesta en cuanto a cuál de las partes es beneficiada por el derecho aplicable. ***Maderas Tratadas v. Sun Alliance et. al.,*** supra, pág. 926.

## IV.

En este caso, el TPI dictó una *Sentencia* de forma sumaria en la que desestimó la reclamación por incumplimiento de contrato y daños promovida por Chemex en contra de Allianz Global. En su dictamen, el foro primario concluyó que la aseguradora no incumplió la Póliza objeto del pleito, que determinó correctamente que los daños reclamados no excedían el deducible establecido, que actuó correctamente al cerrar por inactividad la reclamación de la parte apelante y que no incurrió en dolo. A su entender, no surgió

evidencia para cuestionar la conclusión de la aseguradora ni para establecer que la parte apelante cooperó en el trámite de la reclamación ni en la identificación de los alegados daños adicionales.

En oposición, Chemex planteó que existían hechos en controversia, que la *Sentencia* sumaria no procedía en derecho y, en síntesis, que la desestimación no procedía porque no se demostró que Allianz Global cumplió cabalmente con sus deberes y obligaciones ni que sufrió perjuicio sustancial alguno. Sobre esto último, su posición es que la tardanza u omisión de Chemex en notificar los detalles de daños adicionales no era suficiente para justificar la desestimación por no probarse que su falta de cooperación haya causado perjuicio suficiente para relevar de responsabilidad a la aseguradora. En adición, sostuvo que la parte apelada incumplió con sus deberes bajo el Código de Seguros, que la aseguradora no investigó rápidamente la reclamación, que esta no podía imponer condiciones irrazonables bajo el pretexto de información insuficiente y que tampoco intentó de buena fe realizar un ajuste rápido, justo y equitativo.

En cambio, Allianz Global argumentó a favor de la confirmación de la *Sentencia* y solicitó la imposición de sanciones a Chemex por frivolidad y temeridad en la presentación de la *Apelación.* Por un lado, planteó que Chemex no logró evidenciar que se incumplió con la Póliza ni con el Código de Seguros y que, por el contrario, se demostró que no presentó una reclamación que excediera el deducible de la Póliza. Por el otro, esbozó que fue la parte apelante quien no proveyó la información necesaria para acreditar o comenzar una investigación de los supuestos daños adicionales a los reclamados originalmente, los cuales solo mencionó en una comunicación a través de su corredora de seguros. Por todo ello, adujo que la parte apelante no controvirtió los hechos

materiales que demuestran que, por una parte, Allianz Global cumplió todas sus obligaciones y, por la otra, que Chemex incumplió con sus deberes.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resulta palmario que el TPI no incidió en los errores señalados. La determinación apelada fue correcta tanto en materia procesal como en sus fundamentos en derecho. Veamos.

En primer lugar, Chemex <u>no presentó prueba</u> ni adujo razón suficiente por la cual se deban rechazar los hechos que Allianz Global propuso como incontrovertidos ni aquellas determinaciones de hechos a las que llegó el foro primario. Por el contrario, el cuadro fáctico considerado por el TPI se sostiene ampliamente en la prueba que obra en el expediente del caso.

Por un lado, según se desprende de los propios términos de la Póliza, la parte apelante tenía una obligación de notificar a Allianz Global prontamente de cualquier pérdida o daño, incluyendo una descripción de la propiedad involucrada, y luego, proveer tan pronto sea posible una descripción de cómo, cuándo y dónde ocurrió la pérdida o daño. En específico, la Póliza establecía los siguientes deberes de Chemex en el caso de un evento de pérdida:

> **C. Duties In The Event OF Loss**
> You must see that the following are done in the event of loss or damage to Covered Property:
> [...]
> 2. Give us prompt notice of the loss or damage. Include a description of the property Involved.
> 3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
> [...]
> 6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> [...]
> 8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> [...]

9. Cooperate with us in the investigation or settlement of the claim.[20]

Ahora bien, los hechos y la prueba documental del caso no demuestran que la parte apelante haya cumplido con dichas obligaciones, sino todo lo contrario, las incumplió. Las determinaciones de hechos del TPI a estos efectos se sostienen por la prueba que obra en el expediente del caso.

Más aún, en su *Oposición a moción solicitando sentencia sumaria,* Chemex se dedicó únicamente a: (1) negar la mayoría de los hechos por ser una descripción restrictiva que inducía a error; (2) objetar la admisibilidad de tres documentos, los cuales fueron producidos por la propia parte apelante; (3) rechazar el siguiente hecho: "[c]oncluido el descubrimiento de prueba en el caso de autos, la parte demandante no produjo evidencia alguna de que le sometió a AGCS evidencia de supuestos daños más allá [del] 'tráiler' utilizado por Chemex como espacio de oficina", aduciendo que notificó un Informe Pericial de 7 de abril de 2021 y un segundo Informe Pericial revisado de 3 de noviembre de 2021 con el detalle de las pérdidas sufridas y cotizaciones de reparaciones para las mismas; y (4) negar el contenido de una de las cartas de la representación legal de Allianz Global por contener conclusiones de hecho y derecho erróneas. De ello, se puede desprender que la oposición de la parte apelante <u>no realizó una relación de los hechos materiales que estaban en controversia con indicación de la prueba en la que se establecían dichos hechos</u>. Es decir, no indicó qué evidencia obraba en el expediente para impugnar los hechos según fueron propuestos por Allianz Global y, por lo tanto, estos se sostienen, puesto que además están apoyados por la prueba.

En concreto, advertimos que los referidos informes periciales, entregados por Chemex durante el descubrimiento de prueba,

---

[20] Apéndice de la *Apelación,* Anejo 23, pág. 244.

fueron preparados con posterioridad a la presentación de la *Demanda.* Por ello, así mismo como el TPI razonó, resulta imperativo concluir que, previo a la presentación de la *Demanda,* ni Chemex ni su corredora de seguros contestaron las comunicaciones enviadas en el 2019 por Allianz Global ni proveyeron información alguna relacionada a las alegadas pérdidas adicionales, a pesar de que se le concedió amplia oportunidad para ello. En ese mismo respecto, es imposible considerar que la aseguradora incumplió una obligación contractual que no tenía previo a la presentación de la *Demanda,* dado que no se le había notificado sobre el daño alegado según estipulaban los términos de la Póliza.

Sobre la falta de cooperación, la parte apelante argumentó que la jurisprudencia ha establecido que la misma debe ser de tal magnitud que le cause perjuicio a la aseguradora para que provoque el relevo de responsabilidad. Según arguyó, en este caso, su tardanza o falta de notificación a la parte apelada no amerita el cierre de su reclamación bajo la Póliza. No le asiste la razón. Lo anterior no debe ser óbice para que concluyamos que, en este caso, la parte apelante no cooperó y, peor aún, no cumplió con los términos de la Póliza. Lo contrario sería avalar el incumplimiento con los términos de la Póliza como la ley entre las partes y desmerecería la buena fe que deben desplegar las partes en el contrato de seguro, especialmente en el procesamiento de las reclamaciones por daños bajo una póliza. Proveer la información sobre los daños adicionales, según le requirió Allianz Global a hacer, no era tan solo su deber, sino que estaba en su mejor interés. No obstante, no proveyeron dicha información y, en el proceso ante el TPI, tampoco presentaron evidencia de haberlo hecho previo al comienzo del litigio. Ausente dicha prueba, resulta imposible razonar que Allianz Global incurrió en incumplimiento alguno de los

términos de la Póliza y, mucho menos, de sus obligaciones bajo el Código de Seguros, *supra.*

Por otro lado, en adición a los términos de la Póliza, la parte apelada también tenía la facultad bajo el Art. 27.163 del Código de Seguros, *supra,* para cerrar la reclamación ante la inactividad del reclamante, toda vez que Chemex no cooperó ni entregó la información necesaria para que Allianz Global pudiese ajustar la reclamación. En este caso, según se desprende de los hechos, la parte apelante se quedó de brazos cruzados y los supuestos daños adicionales que le informó a la aseguradora que tenía se quedaron en una mera comunicación de la corredora de seguros de Chemex a Allianz Global. Nada más se realizó.

Por todo lo anterior, cabe concluir que Chemex incumplió con sus obligaciones bajo la Póliza y que Allianz Global no contravino las suyas, ya sean las que emanaron de esta o las que le impone el Código de Seguros. Asimismo, resulta palmario que la aseguradora actuó correctamente al decretar el cierre de la reclamación a causa de la inactividad por segunda vez, así como al cerrarla inicialmente porque los daños no superaban el deducible de la Póliza. Por todo ello, el TPI aplicó correctamente el derecho a la controversia y no procede la revocación o modificación de su dictamen.

Por último, no encontramos razón para imponer sanciones a Chemex en esta etapa apelativa. A todas luces, la presentación del recurso de epígrafe no adolece de clara frivolidad, ni obedece a intenciones de dilatar los procedimientos, ni constituye conducta constitutiva de demora, abandono obstrucción o falta de diligencia en perjuicio de la administración de la justicia. Por el contrario, parece partir de una apreciación errónea del derecho o una desavenencia honesta en cuanto a cuál parte es favorecida por el derecho aplicable.

**V.**

Por los fundamentos expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente.  Si bien la demandante no cumplió diligentemente con su deber de cooperación bajo la póliza, no se demostró que ello hubiese causado perjuicio a la Aseguradora o que dicha falta hubiese sido "sustancial y material", producto de una actitud de "abierta y voluntaria obstrucción". *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 213 (1994).  Por tal razón, el incumplimiento de la demandante no es de tal naturaleza que le impidiese instar una reclamación por la vía judicial.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones