Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| WILFREDO VÉLEZ HERNÁNDEZ Y OTROS<br><br>Recurridos<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES Y OTROS<br><br>Recurridos<br><br>G.F. NATIONAL PROPERTIES, CORP.<br><br>Interventora-Peticionaria | TA2025AP00720 | *Apelación* acogida como ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2024CV00487<br><br>Sobre: Mandamus |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de enero de 2026.

Comparece G.F. NATIONAL PROPERTIES, CORP. (en adelante, parte peticionaria) mediante un recurso de apelación acogido como *certiorari*, por ser lo procedente en derecho, para solicitarnos la revisión de la *Resolución* emitida y notificada el 27 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo.[1] Mediante la *Resolución* recurrida, el tribunal de instancia denegó una solicitud de intervención y relevo de sentencia interpuesta por la parte peticionaria. Sobre dicha solicitud se incoó una solicitud de reconsideración,[2] la cual fue denegada mediante *Resolución*, emitida el 12 de noviembre de 2025 y notificada el 26 del mismo mes y año.[3]

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 148.
[2] SUMAC TPI, a la Entrada Núm. 149.
[3] *Íd.*, a la Entrada Núm. 150.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

El caso del título inició cuando, el 13 de marzo de 2024, la parte demandante Wilfredo Vélez Hernández y otros,[4] interpuso una acción intitulada *Mandamus* contra la parte demandada Departamento de Recursos Naturales y Ambientales y otros (en adelante, parte recurrida).[5] La parte peticionaria no fue parte demandante ni demandada. En este pliego, la parte demandante adujo que se acudió al foro de instancia debido a que la Cueva del Indio, un lugar de gran valor natural, histórico y cultural se encontraba desprotegido y sin acceso seguro y gratuito para el pueblo. Esbozó que, aunque existía legislación que ordenaba ciertos planes para su conservación y desarrollo, las agencias concernidas no habían cumplido con sus deberes sobre diseñar ni implementar el Plan de conservación y desarrollo, el Plan de acción ni el Plan de Manejo, exigidos por ley. Acotó que no se había garantizado el acceso público ni protegido los yacimientos arqueológicos. Dado a lo anterior, solicitó que se ordenara a las agencias demandadas a cumplir con sus deberes ministeriales y se crearan los planes requeridos, se expropiaran terrenos para asegurar el acceso, se protegiera la zona y los recursos arqueológicos, y se rindieran los informes anuales dispuestos por ley, para preservar el patrimonio y así se permitiera su disfrute seguro y gratuito a las generaciones presentes y futuras.

Luego de varias instancias procesales innecesarias pormenorizar, se presentaron tres (3) mociones de desestimación. La *primera* fue presentada el 13 de junio de 2024, por la Compañía

---

[4] En esencia, vecinos y miembros de organizaciones comunitarias.
[5] SUMAC TPI, a la Entrada Núm. 1.

de Turismo.[6] En esta ocasión, arguyó que la causa de acción debía desestimarse porque no habían incumplido deber ministerial alguno y puesto a que una porción de las alegaciones esbozas en el pliego estaban presuntamente dirigidas a terceras personas que no eran parte en el caso.

La *segunda* y la *tercera* solicitud de desestimación fueron presentadas el 14 de junio de 2024. Una fue presentada por el Instituto de Cultura Puertorriqueña.[7] Esbozó, en síntesis, que la causa de acción debía ser desestimada dado a que las alegaciones, aun tomadas como ciertas, no justificaban la concesión de un remedio por dicha parte. La otra fue presentada por el Estado Libre Asociado de Puerto Rico (Departamento de Recursos Naturales y Ambientales, Departamento de Transportación y Obras Públicas y el Departamento de Desarrollo Económico y Comercio, en adelante, ELA), mediante una comparecencia especial.[8] Adujo que el caso debía ser desestimado por incumplimiento con las formalidades exigidas en los recursos de *mandamus* conforme a nuestro ordenamiento legal.

En reacción, el 2 de julio de 2024, la parte demandante incoó una *Moción en cumplimiento de orden, oposición a solicitudes de desestimación y solicitud de orden*.[9] En esencia, se opuso y solicitó al foro de instancia que ordenara a las partes a contestar el pliego de *mandamus*.

Así las cosas, el 25 de julio de 2024, el Municipio de Arecibo presentó su *Contestación a mandamus*.[10] Aceptó algunas alegaciones.

Por otro lado, el 9 de agosto de 2024, el Instituto de Cultura Puertorriqueña interpuso una *Réplica a "Moción en cumplimiento de*

---

[6] SUMAC TPI, a la Entrada Núm. 31.
[7] *Íd.,* a la Entrada Núm. 32.
[8] *Íd.,* a la Entrada Núm. 34.
[9] *Íd.,* a la Entrada Núm. 37.
[10] *Íd.,* a la Entrada Núm. 42.

*orden, oposición a solicitudes de desestimación y solicitud de orden.*"[11]   En respuesta a las solicitudes desestimatorias, mediante *Resolución* emitida y notificada el 24 de septiembre de 2024, el foro de instancia denegó las mismas y ordenó a las partes codemandadas a contestar la petición de *mandamus*.[12]

Así las cosas, el 4 de octubre de 2024, el Instituto de Cultura Puertorriqueña presentó su *Contestación a la petición de mandamus*.[13] Aceptó algunas alegaciones, negó otras. Presentó, además, sus defensas afirmativas y solicitó se denegara la petición de *mandamus*.

Luego, el 27 de octubre de 2024, el ELA presentó su *Contestación a petición de mandamus*.[14] Como parte de sus alegaciones, peticionó que se denegara el pliego de *mandamus*. Por su parte, el 28 de octubre de 2024, la Compañía de Turismo incoó su *Contestación a petición de mandamus*.[15] Admitió algunas alegaciones, negó otras y también presentó defensas afirmativas.

Así las cosas, el 8 de noviembre de 2024, la parte demandante interpuso una *Solicitud de sentencia por las alegaciones*.[16] Subsiguientemente, el 6 de diciembre de 2024, la parte demandante presentó una *Solicitud de orden en aseguramiento de sentencia y para la seguridad pública*.[17] En respuesta, mediante *Orden* emitida y notificada el 11 de diciembre de 2024, el tribunal *a quo* señaló una vista.[18]

Acaecidos otros trámites procesales innecesarios pormenorizar, el 17 de diciembre de 2024, el Instituto de Cultura Puertorriqueña presentó su *Oposición a solicitud de sentencia por las*

---

[11] SUMAC TPI, a la Entrada Núm. 46.
[12] *Íd.,* a la Entrada Núm. 48.
[13] *Íd.,* a la Entrada Núm. 50.
[14] *Íd.,* a la Entrada Núm. 55.
[15] *Íd.,* a la Entrada Núm. 56.
[16] *Íd.,* a la Entrada Núm. 59.
[17] *Íd.,* a la Entrada Núm. 78.
[18] *Íd.,* a la Entrada Núm. 79.

*alegaciones instada por la parte demandante.*[19]   De igual forma, el 17 de diciembre de 2024, la Compañía de Turismo interpuso su *Oposición a la solicitud de sentencia por las alegaciones.*[20] Por su parte, el 17 de diciembre de 2024, el ELA presentó su *Oposición a la solicitud de sentencia por las alegaciones.*[21]

Así las cosas, mediante *Resolución* emitida y notificada el 14 de julio de 2025, el tribunal de instancia declaró *No Ha Lugar* la solicitud para que se dictara sentencia por las alegaciones y ordenó la continuación de los procedimientos.[22]

Al día siguiente, el 15 de julio de 2025, se celebró vista.[23] En esta, las partes informaron que habían llegado a unos acuerdos. A tenor, el tribunal de instancia concedió término para que se presentara la correspondiente estipulación por escrito. Semanas más tarde, el 4 de agosto de 2025, el ELA presentó una *Solicitud de prórroga para presentar moci[ó]n conjunta de transacción,*[24] la cual fue concedida.

Finalmente, el 10 de septiembre de 2025, las partes presentaron la *Moción conjunta en cumplimiento de orden consignando acuerdo transaccional.*[25] Como parte del escrito, las partes incluyeron lo que constituyó la estipulación entre las partes, lo cual adoptamos por referencia del antedicho escrito. Solicitaron que se emitiera sentencia de conformidad a los acuerdos alcanzados.

De ahí, el 11 de septiembre de 2025, el tribunal de instancia emitió y notificó su *Sentencia.*[26] Mediante este dictamen, el tribunal *a quo* impartió aprobación a los acuerdos alcanzados y dictó Sentencia de conformidad.

---

[19] SUMAC TPI, a la Entrada Núm. 89.
[20] *Íd.,* a la Entrada Núm. 93.
[21] *Íd.,* a la Entrada Núm. 94.
[22] *Íd.,* a la Entrada Núm. 127.
[23] *Íd.,* a la Entrada Núm. 128.
[24] *Íd.,* a la Entrada Núm. 132.
[25] *Íd.,* a la Entrada Núm. 137.
[26] *Íd.,* a la Entrada Núm. 139.

Así las cosas, el 14 de octubre de 2025, compareció por primera vez al pleito la parte peticionaria mediante dos (2) escritos. El *primero* fue una *Moción de intervención y relevo de sentencia.*[27] Solicitó, en síntesis, la intervención como parte demandada en el pleito, que se declarara nula la sentencia emitida en este caso y aceptara la *Contestación a demanda de mandamus,*[28] presentada en esa misma fecha.

En respuesta a la solicitud de intervención y relevo de sentencia, mediante *Resolución,* emitida y notificada el 27 de octubre de 2025, el foro de instancia declaró la misma *No Ha Lugar.*[29] Por otro lado, mediante *Orden,* emitida y notificada en igual fecha, dispuso en torno a la contestación a demanda, para que la parte peticionaria viera la *Resolución* emitida y notificada en esta misma fecha.[30]

En desacuerdo, el 11 de noviembre de 2025, la parte peticionaria instó una *Solicitud de reconsideración a resolución interlocutoria sobre moción de intervención y relevo de sentencia.*[31] En respuesta, mediante *Resolución* notificada el 26 de noviembre de 2025, el tribunal de instancia denegó lo solicitado.[32]

Aun inconforme con lo resuelto, el 29 de diciembre de 2025, compareció la parte peticionaria mediante un recurso acogido como *certiorari* y esgrimió la comisión de los siguientes seis (6) señalamientos de error:

> **Primer error:** Erró el TPI al no declarar nula la Sentencia del 11 de septiembre de 2025 al haberse emitido sin la inclusión de una parte indispensable.
>
> **Segundo error:** Erró el TPI al no resolver el planteamiento traído ante su consideración sobre la ausencia de partes indispensables antes de dictar la Sentencia del 11 de septiembre de 2025.

---

[27] SUMAC TPI, a la Entrada Núm. 140.
[28] *Íd.,* a la Entrada Núm. 141.
[29] *Íd.,* a la Entrada Núm. 148.
[30] *Íd.,* a la Entrada Núm. 146.
[31] *Íd.,* a la Entrada Núm. 149.
[32] *Íd.,* a la Entrada Núm. 150.

**Tercer error**: Erró el TPI al no declarar nulo el acuerdo transaccional que dio paso a la Sentencia del 11 de septiembre de 2025 a pesar de que el mismo es contrario a derecho.

**Cuarto error:** Erró el TPI al expedir el auto de mandamos y, mediante la Sentencia del 11 de septiembre de 2025, autorizar a los demandados apelados a realizar acciones que no se encuentran entre sus deberes y facultades ministeriales.

**Quinto error:** Erró el TPI al no permitir la intervención de la apelante en el caso.

**Sexto error:** Erró el TPI al disponer de manera final la solicitud de relevo de sentencia y de intervención de la apelante mediante una Resolución Interlocutoria.

Mediante *Resolución* emitida el 12 de enero de 2026, concedimos a la parte recurrida hasta el 20 de enero de 2026, para expresarse en torno al recurso. El 16 de enero de 2026, compareció la parte recurrida para solicitarnos una prórroga para cumplir con lo ordenado. A tenor, mediante *Resolución* emitida el 16 de enero de 2026, le concedimos hasta el 26 de enero de 2026, para cumplir con nuestra *Resolución* del 12 de enero de 2026.

El 26 de enero de 2026, compareció la parte recurrida mediante *Oposición a la expedición del certiorari.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso ante nos.

II

**A. La Expedición del Recurso de *Certiorari***

El recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[33] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[34] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[35] A esos efectos, se

---

[33] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[34] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).

[35] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[36] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones dispone que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [37]

Asimismo, el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[38] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[39]

---

[36] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.
[37] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).
[38] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[39] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

De otra parte, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[40]

A la luz de la normativa antes expuesta, procederemos a disponer del presente recurso.

### III

En el recurso del título, la parte peticionaria acude ante nos luego de que el foro de instancia denegara una solicitud de relevo de sentencia presentada al amparo de la Regla 49.2 de las de Procedimiento Civil.[41] Nos plantea que el foro de instancia incidió al: (i) no permitirle la intervención en este caso; (ii) no declarar nula la sentencia y haber resuelto la misma sin haber atendido cierta controversia sobre incluir a una parte indispensable; (iii) no declarar nulo el acuerdo transaccional que desencadenó en la sentencia emitida en este caso y al expedir el auto de *mandamus*, y (iv) disponer de manera final la solicitud de relevo de sentencia mediante un dictamen interlocutorio.

Según destacamos en nuestra previa exposición doctrinal, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[42] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de

---

[40] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).
[41] 32 LPRA Ap. V, R. 49.2.
[42] *Pueblo v. Irizarry*, supra, a las págs. 788–789.

Primera Instancia. Por ello, el auto solicitado tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[43]

Tras evaluar minuciosamente el recurso presentado por la parte peticionaria, y luego de una revisión de la totalidad del expediente ante nos, así como el derecho aplicable, es nuestra apreciación que no se configuran ninguna de las instancias que justifican la expedición del auto de *certiorari* al amparo de la Regla 40 de nuestro Reglamento.[44] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Tampoco estamos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. El dictamen recurrido no es patentemente erróneo y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que la parte peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia.

En mérito de todo lo antes expuesto, no atisbamos razón alguna para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[43] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[44] *Íd.*